STATE OF NORTH CAROLINA v. TOMMY ALLEN

No. 7910SC748

(Filed 4 March 1980)

1. **Receiving Stolen Goods § 5.1— receiving stolen televisions—defendant's knowledge that goods stolen—sufficiency of evidence**

   Evidence that defendant knew television sets were stolen at the time he received them was sufficient to be submitted to the jury where it tended to show that defendant purchased from an individual two color televisions and two stereos still in their sealed boxes, stamped with the name of a firm from which such equipment had been stolen; defendant paid about half as much as the equipment was worth; on two subsequent occasions defendant made other similar purchases; and five or six months after the purchases in question, defendant told an SBI agent that he knew the items he had purchased were stolen.

2. **Receiving Stolen Goods § 1— absolute knowledge that goods stolen not required**

   There was no merit to defendant's contention that the State was required to show that he had absolute knowledge that television sets which he received were stolen, since the statute under which defendant was charged provided that a person would be guilty of receiving stolen goods if he received them "knowing or having reasonable grounds to believe" that they were stolen. G.S. 14-71.

3. **Constitutional Law § 50— Speedy Trial Act inapplicable**

   The Speedy Trial Act, which applied to defendants arrested or indicted after 1 October 1978, was inapplicable to defendant's case since he was indicted on 30 May and arrested on 31 May 1978.

4. **Receiving Stolen Goods § 4; Criminal Law § 81— televisions stolen— evidence of value not prejudicial—best evidence rule inapplicable**

   In a prosecution for receiving stolen property, defendant was not prejudiced by the trial court's error in allowing an SBI agent to give his opinion of the value of the stolen goods allegedly received; furthermore, the "best evidence rule" did not require that the State introduce the stolen goods into evidence, since that rule applied to writings introduced into evidence to prove their contents.

5. **Criminal Law § 86.5— specific act of defendant—question proper for impeachment**

   Defendant who was accused of receiving stolen property could properly be asked for impeachment purposes if he had conspired to break into a named house to steal guns.

6. **Criminal Law § 87— witness's name not on list—defendant not prejudiced by testimony**

   Defendant was not prejudiced where the trial court permitted a witness, whose name was not on the list of potential witnesses for the State given to

defendant before voir dire of the jury, to testify, since the court inquired
whether any of the jurors were acquainted with the witness; none responded
that they were; and defendant did not ask for a recess to secure witnesses to
counteract the surprise witness's testimony.

APPEAL by defendant from *Lee, Judge.* Judgment entered 29
March 1979 in Superior Court, WAKE County. Heard in the Court
of Appeals 15 January 1980.

Defendant was charged in each of two indictments with
receiving a Philco color console television set knowing it was
stolen. The acts allegedly occurred on 30 May and 15 June 1977.

The State presented evidence that in May and June 1977 an
employee of Brown-Rogers-Dixson, together with one James
Williams, stole some stereos and TVs from the firm. Williams and
a companion delivered the appliances to a car lot in Smithfield.

Bobby Davis, security supervisor for GTE Sylvania in
Smithfield, went to see defendant about some TVs and stereos on
15 September 1977. On 3 November 1977 defendant was ques-
tioned by Reginald Shaw of the SBI, and he told Shaw that in
May 1977 he had learned he could purchase a color TV set from
James Williams. A few days later Williams arrived in a pick-up
truck and delivered two TVs and two stereos, still in their boxes,
marked "Philco" and stamped "Brown-Rogers-Dixson." He paid
Williams $250 or $275 for each TV and $150 for each stereo. He
kept one TV and one stereo and sold the others to Andy Creech.
He later sold the TV he had kept to James Cole, who subsequent-
ly testified that he had purchased it for his friend Cecil Kelly.

Approximately two weeks later, Williams delivered to de-
fendant another Philco console color TV, for which he paid $300.
Two or three weeks later Williams delivered to defendant's place
of business another stereo and TV set, which were purchased by
Jimmy Britt. Defendant volunteered to Shaw that "he knew he
was wrong and guessed that he would just have to pay a heavy
fine." He and Jimmy Britt "knew the items . . . purchased from
Williams were stolen. Further, he knew it was wrong to buy the
stolen items . . . ." In a second interview on 17 November 1977
defendant told Shaw that there was "no question in his mind that
Britt knew the stuff was stolen because he got a $1,000 TV set
and a stereo for $525." Shaw took the serial numbers from the

TVs in defendant's and Cecil Kelly's residences, and these were the bases of the two indictments.

Shaw questioned defendant again on 3 February 1978. At that time defendant told him that before Labor Day 1977 defendant had told an FBI agent "that Britt had the stolen TV and stolen stereo." Defendant also told Shaw that on the night Andy Creech bought his TV and stereo, 15 June 1977, Creech knew they were stolen.

Defendant testified that when he talked to Williams about purchasing a TV set, he assumed that Williams worked for Brown-Rogers-Dixson. It was explained to him that the sets he bought had been damaged in shipment and repaired, and the employees had a chance to buy them at cost. The sets he received were in sealed boxes. On the Friday after he got the first set, 4 June, defendant contacted Agent Mulholland of the FBI, to whom he had given information in the past, and they discussed the TV set. He gave Mulholland the serial number to check, and it didn't show up stolen. Defendant then told Mulholland that "if any of this stuff is stolen, it has got to be an inside operation. Somebody is covering it up maybe in the shipping department or in the office one." At the times defendant took the sets, he did not know they were stolen.

On Wednesday after Labor Day, Bobby Davis came to see defendant. Defendant had not had "any knowledge or any proof that the TV's were stolen," but Davis told him that they were. Defendant did not tell Shaw that defendant and Britt knew the items were stolen when they purchased them, or that Britt must have known they were stolen because of the price he paid. He did not tell Shaw that Andy Creech knew the stereo and TV he bought were stolen.

Agent Mulholland of the FBI testified that defendant contacted him in May or June 1977 and told him "that he had received some information that some individuals were selling some TV's in the Johnston County area and that there was some indication that possibly these items could be stolen." Mulholland checked the serial number defendant gave him and received no information that that item had been stolen. In September, Mulholland contacted Bobby Davis and suggested he get defendant's cooperation in working on the matter of the TV sets. For several years

defendant had been assisting the FBI, giving them information which enabled them to recover "a substantial amount of things."

On rebuttal, Agent Richardson of the SBI stated he was present when defendant made the statement that there was no question in his mind that Britt knew the stuff was stolen, since he had gotten a thousand dollars worth of equipment for $525. Bobby Davis, recalled, testified that defendant had told him that Britt knew the items were stolen when he bought them.

Defendant was found guilty on both counts of felonious receiving of stolen goods. He was sentenced to one year in Case #78CRS31630, and five years, suspended on condition, in Case #78CRS31632. Defendant appeals.

*Attorney General Edmisten, by Special Deputy Attorney General Charles J. Murray, for the State.*

*Gerald L. Bass for defendant appellant.*

ARNOLD, Judge.

[1] The major issue on this appeal is whether the evidence that defendant knew the television sets were stolen at the time he received them was sufficient to go to the jury. If it was, defendant's motion to dismiss was properly denied. Considering the evidence in the light most favorable to the State, as we are required to do, *State v. Jones*, 32 N.C. App. 408, 232 S.E. 2d 475, *cert. denied* and *app. dism.* 292 N.C. 643, 235 S.E. 2d 63 (1977), we find the following: In May or June 1977, defendant purchased from James Williams two color TVs and two stereos, still in their sealed boxes and stamped "Brown-Rogers-Dixson." He paid $250 or $275 each for the TVs and $150 each for the stereos. Later he purchased another console color TV from Williams for $300. An additional TV and stereo were delivered to his business for purchase by Jimmy Britt. On 3 November 1977, defendant told the SBI that he knew the items purchased from Williams were stolen.

Defendant argues that this statement of 3 November is the only evidence that defendant knew the items were stolen, and that it is not probative because Bobby Davis had visited defendant on 15 September 1977 and told him that they were stolen. Defendant argues that the fact he knew on 3 November, having

been told by Davis on 15 September, does not mean he knew at the time he purchased the items.

The State presented further evidence, however. On 3 February 1978 defendant told the SBI that "before Labor Day 1977" he had told an FBI agent "that Britt had the stolen TV and stolen stereo." Davis' visit with defendant was after Labor Day. And while defendant is not charged with receiving the items allegedly purchased by Britt, they were acquired from Williams under circumstances identical to the two transactions for which he was charged. If defendant knew in the summer of 1977 that the items Britt purchased were stolen, there is a reasonable inference that he knew the ones he purchased were stolen as well. Further, defendant told the SBI on 3 February that when Andy Creech bought a TV and stereo from him on 15 June, Creech knew they were stolen. Defendant does not attempt to explain how Creech could have known this if defendant did not know.

Other evidence supports an inference of defendant's knowledge. Defendant told the SBI that there was no question in his mind that Britt knew the sets were stolen, because of the good prices Britt got. Defendant got the same low prices on the items he purchased. Defendant purported to believe that the prices were low because the sets had been damaged and repaired, yet they arrived in sealed boxes. When defendant checked a serial number with the FBI and got no information that the set was stolen, he nevertheless told the agent that "if any of this stuff is stolen, it has got to be an inside job."

[2] Defendant argues that to withstand his motion the State is required to show that he had absolute knowledge that the sets were stolen. In defendant's view, any reasonable grounds he had to believe that the items were stolen are insufficient, and he cannot be charged with knowledge until 15 September when he "knew for certain," having been told by Davis that the sets were in fact stolen. G.S. 14-71, as amended in 1975, provides that a person shall be guilty of receiving stolen goods if he receives them "knowing or having reasonable grounds to believe" that they are stolen. Furthermore, guilty knowledge may be inferred from the circumstances. *State v. Hart*, 14 N.C. App. 120, 187 S.E. 2d 351, *cert. denied*, 281 N.C. 625, 190 S.E. 2d 469 (1972). In spite of defendant's argument to the contrary, we find that sufficient

evidence was presented to take the case to the jury. There was no error in the denial of defendant's motion.

[3]  Defendant next argues that he was denied his right to a speedy trial because he was not brought to trial within 120 days of his indictment. His reliance upon the Speedy Trial Act, G.S. 15A-701 et seq., is misplaced, however. The Act is Sec. 1 of Chapter 787 of the 1977 Session Laws, and Sec. 2 of that chapter says plainly: "This act shall apply to any person who is arrested . . . or is notified . . . that an indictment has been filed . . . against him, on or after October 1, 1978." As defendant was indicted on 30 May and arrested on 31 May 1978, the Act is clearly inapplicable to his case. Accord, *State v. McLawhorn*, 43 N.C. App. 695, 260 S.E. 2d 138 (1979). Defendant concedes that he did not petition for a speedy trial, as was provided for by G.S. 15A-702 & -703 prior to the enactment of the Speedy Trial Act. We find no merit in this assignment of error.

No prejudicial error appears in the court's allowing testimony that there were three thefts from Brown-Rogers-Dixson. While it is true that defendant was charged with only two counts of receiving, defendant himself testified that James Williams made three deliveries to defendant's place of business. And we fail to see how defendant would be prejudiced by evidence that a third party committed a theft in which defendant did not take part.

[4]  We agree with defendant that the court erred in allowing SBI Agent Shaw to give his opinion of the value of the TV sets, since no foundation had been laid for this opinion testimony. However, we do not find that this error was prejudicial. In fact, defendant has not argued any prejudice to his case by the admission of this testimony. Nor do we find prejudice in the admission of State's Exhibits 11 and 12 for the purpose of illustrating testimony. Defendant argues that the "best evidence rule" was violated because the State could have produced the sets in question, but we note that the best evidence rule applies to *writings* introduced into evidence to prove their contents. 2 Stansbury's N.C. Evidence § 190 (Brandis Rev. 1973).

[5]  On cross-examination, defendant was asked, "Mr. Allen, during the last six months, isn't it a fact, that you have conspired with other people to break into the house of Reginald Shirley and

steal some guns?" Defendant's objection to this question was overruled, and he assigns error to this ruling. He cites no authority for his position, arguing simply that the question was "unfair." It is the law in North Carolina that for the purpose of impeachment a witness may be asked whether he has committed specific criminal acts. *State v. Gainey*, 280 N.C. 366, 185 S.E. 2d 874 (1972). The question was properly allowed.

[6]   On rebuttal, the State called William Talton, and defendant objects to the admission of his testimony since Talton's name was not on the list of potential witnesses for the State given to defendant before voir dire of the jury. Defendant raised this objection at trial, and the court inquired whether any of the jurors was acquainted with the witness. None responded that he was. Defendant now contends that he was prejudiced because Talton's testimony conflicted with defendant's on a particular point, and, not knowing that Talton would be called, he was not prepared with witnesses who could corroborate defendant's testimony on that point. Defendant did not object on this ground at trial, however, or ask for a recess in which to secure witnesses to counteract Talton's testimony. We find no prejudicial error here.

Defendant assigns error to the court's statement in the charge to the jury of the essential elements of receiving stolen goods, arguing not that the instructions given were incorrect, but that the court should have elaborated upon the "skeleton" charge that he gave. Defendant submitted no requested instructions to the trial court, however, and we find that the instructions given were sufficient. See *State v. Boyd*, 278 N.C. 682, 180 S.E. 2d 794 (1971).

Although defendant is correct that Willie Cooley, the Brown-Rogers-Dixson employee who was involved in the thefts, was not an accomplice to the crime of receiving stolen property, we find no prejudice to defendant from the court's charge on this point, directed as it was to the fact that the jury should examine Cooley's testimony with extreme care. The error could only have worked to defendant's benefit. See *State v. Saults*, 294 N.C. 722, 242 S.E. 2d 801 (1978).

The defendant received a fair trial, free from prejudicial error.

Willetts v. Insurance Corp.

No error.

Judges PARKER and WEBB concur.