(No. 60957.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. HAZEL WRIGHT, Appellee.

*Opinion filed January 23, 1986.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Mark L. Rotert, Assistant Attorney General, of Chicago, and Michael E. Shabat, Joan S. Cherry and Maureen A. Harton, Assistant State's Attorneys, of counsel), for the People.

James J. Doherty, Public Defender, of Chicago (Aaron L. Meyers, Assistant Public Defender, of counsel), for appellee.

JUSTICE WARD delivered the opinion of the court:

The defendant, Hazel Wright, was found guilty in the circuit court of Cook County on two counts of murder and one count of armed violence (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a), 33A—2), and sentenced to 20 years' imprisonment. She appealed to the appellate court, arguing that she had been denied the effective assistance of

counsel, and, while that appeal was pending, she filed a petition for relief in the circuit court under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, par. 122—1 *et seq.*) also alleging the ineffective assistance of counsel. The circuit court, in granting the defendant's petition, vacated its judgments of guilty on the murder counts, entered judgment of not guilty on the armed-violence count and entered a judgment for involuntary manslaughter (Ill. Rev. Stat. 1981, ch. 38, par. 9—3). The defendant was resentenced to five years' imprisonment. The State appealed that judgment to the appellate court, and that court consolidated the State's appeal with the defendant's earlier appeal and, in a Rule 23 order (87 Ill. 2d R. 23), affirmed the judgment of the circuit court granting the defendant's petition (126 Ill. App. 3d 1155). We granted the State's petition for leave to appeal under our Rule 315 (94 Ill. 2d 315(a)).

The evidence showed that the defendant, who was 50 years old, killed her daughter, Marilyn Wright, on January 4, 1981. A prosecution witness, Ganella Archie, said that she was in the home of the defendant on that day and that the defendant was arguing with Marilyn's friend, James Beverly. The defendant was drinking from a glass jar and appeared to the witness to be tired and "high" from the liquor. A short time later the victim was in the kitchen washing dishes when the defendant, who earlier had gone upstairs to lie down, called down the stairs to ask who was making noise in the kitchen. Marilyn walked to the bottom of the stairs and asked her mother why she was holding a gun. A shot was fired and Marilyn fell backward, fatally wounded.

Wright was leaning over her daughter's body when Chicago police officers called to investigate the shooting entered the defendant's home. The defendant told Officer Robert Purcell that she shot her daughter because "[Marilyn] shouldn't have said those things to me." The

defendant later told Officer John Solicki at the police station that she had been arguing throughout the day with her daughter about "rent money and other domestic matters."

The defense theory at trial was that the shooting was accidental and that the defendant therefore lacked the required intent for murder. The defendant claimed that on that day she had argued with James Beverly and had told him to leave her house when she heard him swear at Marilyn. A short time later, Wright was upstairs when she was awakened from an alcohol-induced sleep by noise coming from her kitchen. Because she did not remember that her daughter was in the house, she testified, she walked to the top of the stairs with her gun, which she normally carried with her, to investigate who was downstairs. She recalled that when her daughter asked why she had a gun, she replied that it was her gun and she would fire it when it pleased her. The gun discharged, striking Marilyn. The defendant said that she thought the gun was pointed toward a wall and that she did not intend to fire the weapon or, in any event, shoot her daughter. She had not been angry with her daughter and she said that the argument about rent money had occurred two weeks earlier.

The defendant said that on the day of the shooting she had taken medication prescribed for a nervous condition, medication prescribed for high blood pressure, cold tablets, cough syrup, tranquilizers, and sleeping tablets. She testified also that she had been drinking gin throughout the day.

At the evidentiary hearing on the defendant's petition for post-conviction relief, the attorney who had represented the defendant at trial testified that he had not considered the defendant's mental state at the time of the shooting to have been so severely impaired as to support a defense of voluntary intoxication. He testified

that, although he was aware of the defendant's history of alcohol abuse, he "did not raise [the defense of] no intent based on her alcoholic background because [he did not] think that's a defense. My understanding of the defense of drunkenness *** is that you have to be drunk to the extent that you have no recall of the facts." On cross-examination, counsel stated that a complete loss of memory may not be necessary for the defense, but the accused "would have to just about have no recall." He decided that, because the defendant was able to recall the incident in substantial detail, he would be unable to establish that the defendant's intoxication made it impossible for her to form the intent necessary for murder. He had, however, questioned Ganella Archie about the defendant's condition at the time of the shooting and inquired whether Wright appeared to be intoxicated. (Archie answered in the affirmative.) He also acknowledged that he was aware the defendant was hospitalized after the shooting and that she was diagnosed as suffering the effects of alcohol withdrawal.

Lavergne Camble, another daughter of the defendant, testified at the evidentiary hearing that her mother drank excessively. She testified that normally the defendant was a responsible person but that she became belligerent and combative when drinking. Lavergne said that her mother's abusive drinking habits were aggravated when her husband was fatally shot in 1968 and her grandson killed in 1972. The witness recalled an incident in 1974 when relatives who were gambling in the defendant's home began loudly arguing and ignoring the defendant's request to stop the argument. The defendant, who had been drinking, walked into the room and fired a gun toward the ceiling to stop the argument. Lavergne recounted an incident in 1979 when her mother learned her son had been arrested. The defendant "picked up a fifth of Smirnoff [vodka] off the table

and she just turned the bottle up and drank almost all of it." Finally the witness said that she had seen her mother a couple of days before Marilyn was shot and the defendant was very intoxicated and unable to walk without staggering.

The parties stipulated that the testimony of James Camble, Lavergne's husband, would have been similar to that of his wife.

Dr. Edward Senay, who specializes in the effects of drug addiction, testified at the hearing that a person who combines the use of drugs and alcohol would likely suffer the effects of synergism. He described this condition as the simultaneous action of different agencies which, when taken together, have a greater total effect than the sum of their individual effects. Dr. Senay said that the medication which the defendant testified that she had taken on the day of the shooting would have exaggerated the effects of the alcohol she drank and consequently caused a more severe impairment of judgment. The witness, who had never examined the defendant but had reviewed her medical records, was given a hypothetical situation based on the evidence of drugs and alcohol assumed to have been ingested by the hypothetical person and based on the account in evidence of the shooting, and was asked whether he could form an opinion of the person's mental condition at the time of the shooting. His opinion was that the person was intoxicated to such a degree that judgment was impaired and that the impairment was probably heightened due to the effects of synergism. The doctor also stated that a person could be severely intoxicated and still have substantial recall.

Following argument, the court granted the defendant's petition and, as stated, vacated the judgments of guilty on the two murder counts, vacated its judgment of guilty on the armed-violence count and substituted a judgment of not guilty, and entered a judgment of invol-

untary manslaughter. The defendant was resentenced to five years' imprisonment. The period the defendant had been confined qualified her for release under the new sentence, and Wright was released on the same day the new sentence was imposed.

The State first argues that the circuit court should have dismissed the defendant's petition because the petition was grounded on the same allegation of error that the defendant raised in her direct appeal to the appellate court. The State cites *People v. Walker* (1972), 6 Ill. App. 3d 909, to support its position that the defendant may not raise in a post-conviction petition the same issue raised on direct appeal.

In *People v. Derengowski* (1970), 44 Ill. 2d 476, on which the court in *Walker* relied, this court stated:

"[I]t is not within the view of the [Post-Conviction Hearing] Act to have claims determined which could have been presented upon a direct review of the conviction [citation], and to this end we have consistently held that when appeal is taken, as it was in this case, the judgment of the reviewing court is *res judicata* \*\*\* as to all issues actually raised \*\*\*." 44 Ill. 2d 476, 479.

Nor should the scope of the Act be expanded to permit consideration of questions raised on the appeal simply because the reviewing court has yet to announce its disposition of the appeal. (*People v. Walker* (1972), 6 Ill. App. 3d 909, 911.) Here, however, the factual ground to support the defendant's allegation of inadequate assistance of counsel in her post-conviction petition was not presented until the evidentiary hearing, and the appellate court thus could not have given full consideration to the allegation on the direct appeal.

The defendant's brief in the appellate court noted that every witness at trial made reference to her drinking or her apparent intoxication and, based on this evidence, she contended that counsel's failure to clearly ar-

gue the theory of voluntary manslaughter amounted to ineffective assistance of counsel. In the alternative apparently, she argued that the evidence tended to show that she was acting recklessly at the time of the shooting and that her counsel should have argued from this that she was guilty only of involuntary manslaughter. In her post-conviction petition in the circuit court, the defendant claimed, *inter alia,* that counsel's failure to present substantial, available evidence of her history of substance abuse and the attorney's failure to present expert testimony on the synergistic effect of the intoxicants she drank that day denied her the effective assistance of counsel. She argued that ''[c]ounsel was evidently not mindful of the clear availability of an intoxication defense which negatives the existence of a mental state which *** would have sufficed to reduce the degree of the offense from murder to voluntary manslaughter.'' The allegation in the petition for post-conviction relief, unlike those raised on direct appeal, rested primarily on the charge that counsel misunderstood the law of the defense of intoxication and that the facts needed to substantiate the allegation were not in the record before the appellate court because of counsel's failure to introduce the available evidence. As required by fundamental fairness, we consider the Post-Conviction Hearing Act under the circumstances was a proper means of claiming ineffective assistance of counsel. The alleged incompetency could be substantiated only by evidence which was not in the record before the appellate court. *People v. Gaines* (1984), 105 Ill. 2d 79, 91; *People v. Kamsler* (1968), 39 Ill. 2d 73, 74.

The State argues that the defendant's allegation of ineffective assistance of counsel is based on counsel's decision not to present certain witnesses, which decision, the State says, is a matter of trial tactics and not reviewable. It is true that typically the decision whether to

present a given witness is a matter of trial strategy or tactics and cannot support a claim of ineffective assistance of counsel. (*People v. Haywood* (1980), 82 Ill. 2d 540, 543-44; *People v. Greer* (1980), 79 Ill. 2d 103, 122.) That argument, however, simplistically reduces the defendant's allegation of ineffective representation to a question only of whether or not certain witnesses should have been called. But before that decision can properly be reached, however, defense counsel must determine the defense theory appropriate under the circumstances, including, of course, the law applicable under it. Here counsel's decision not to raise a defense of intoxication or present the expert witness in support of that defense was attributable, it appears, to counsel's misapprehension of the law and not to trial tactics or strategy.

In deciding whether the defendant was afforded effective assistance of counsel it is necessary to determine the correctness of her counsel's understanding of the legal effect of voluntary intoxication on her conduct.

Voluntary intoxication does not excuse criminal conduct, but it may preclude an accused's being found guilty if the intoxication makes impossible the accused's having the mental state required for the commission of the offense. (Ill. Ann. Stat., ch. 38, par. 6—3, Committee Comments, at 353-54 (Smith-Hurd (1972); *People v. Madej* (1985), 106 Ill. 2d 201, 216.) Prior to the enactment of our criminal code of 1961 a conviction for murder required proof that the killing was with malice aforethought. ("Murder is the unlawful killing of a human being, in the peace of the people, with malice aforethought, either expressed or implied" (Ill. Rev. Stat. 1959, ch. 38, par. 358); "[m]alice, either express or implied, is a necessary element of the crime of murder and distinguishes murder from manslaughter" (*People v. Tillman* (1963), 26 Ill. 2d 552, 556).) There were decisions of this court, perhaps founded on the common law, that voluntary in-

toxication would reduce murder to manslaughter if it was shown that the intoxication at the time of the offense was so extreme that the accused could not have acted with malice aforethought. (*People v. Cochran* (1924), 313 Ill. 508; *People v. Tanthorey* (1949), 404 Ill. 520; *People v. Brown* (1953), 415 Ill. 23; *People v. Strader* (1961), 23 Ill. 2d 13; *People v. Tillman* (1963), 26 Ill. 2d 552; *People v. Hicks* (1966), 35 Ill. 2d 390.) Malice aforethought was not susceptible to clear definition, and the "difficult" term was omitted in the definition of murder in our criminal code. (Ill. Ann. Stat., ch. 38, par. 9—1, Committee Comments, at 17 (Smith-Hurd 1979).) The Code states in the part relevant here that the offense is murder if the defendant, when committing the acts which cause death, intends to kill or do great bodily harm, or knows that the acts create a strong probability of death or bodily harm. (Ill. Rev. Stat. 1981, ch. 38, par. 9—1.) With the elimination of malice aforethought as an element of murder the ground was removed on which our courts had held that if a defendant was so intoxicated as to be incapable of acting with malice aforethought, murder was reducible to manslaughter. See *People v. Cochran* (1924), 313 Ill. 2d 508, 519; *People v. Tillman* (1963), 26 Ill. 2d 552; *People v. Smith* (1984), 124 Ill. App. 3d 720.

The definition of voluntary manslaughter in our criminal code does not contain language distinguishing it from murder in regard to the defendant's intention or mental state. Voluntary manslaughter is in relevant part defined simply as criminal homicide committed by one "acting under a sudden and intense passion resulting from serious provocation" or acting in the mistaken belief that self-defense justified the use of deadly force. (Ill. Rev. Stat. 1981, ch. 38, par. 9—2.) There cannot be a judgment of voluntary manslaughter in the absence of one of these mitigating factors. Thus, murder cannot be re-

duced to manslaughter unless one of the two statutory conditions is present.

Involuntary manslaughter is defined in section 9—3 of the Code:

"A person who unintentionally kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly ***."(Ill. Rev. Stat. 1981, ch. 38, par. 9—3.)

Recklessness characterizes the offender's conduct in involuntary manslaughter. Ill. Rev. Stat. 1981, ch. 38, par. 9—3; *People v. Simpson* (1978), 74 Ill. 2d 497, 504.

The trial court, at the hearing on the post-conviction petition, determined on the total evidence that the defendant's intoxication resulted in her being guilty not of murder but of involuntary manslaughter. There was evidence at trial that when the defendant awakened from a drunken sleep she did not remember that her daughter was in the house; that she had walked to the top of the stairs with her gun, which she normally carried, to investigate who was downstairs. The court had heard testimony that when the daughter asked her why she had a gun she told her it was her gun and she would fire it when it pleased her. The defendant testified that she thought the gun was pointed toward a wall and that she did not intend to fire the weapon and, in any event, did not intend to fire it at her daughter. She said that her earlier argument with the daughter about rent money had occurred two weeks earlier and that she no longer was upset with her daughter. There was additional evidence at the post-conviction hearing of the defendant's having taken medications on the day of the shooting and important evidence introduced by the testimony of Dr. Senay. At the hearing, though not at trial, there was testimony that the defendant on another occa-

sion after drinking had fired a gun into the ceiling to stop a family argument. From the evidence the court's conclusion that the defendant's conduct had been that of recklessness at the time of the shooting was not unreasonable. As stated, this court will vacate the finding of a trial court on a petition under the Post-Conviction Hearing Act only if it was manifestly erroneous. (*People v. Nelson* (1974), 58 Ill. 2d 61; *People v. Thomas* (1972), 51 Ill. 2d 39.) We cannot say the court's finding was manifestly erroneous.

It is apparent from his testimony that the attorney who represented the defendant at trial erroneously placed exclusive reliance on the extent of the defendant's ability to recall the incident in considering whether her intoxication could be a factor in precluding her conviction for murder. He considered only the question of the mental state for the crime of murder. He did not consider that the action of the defendant could be regarded as reckless and the possible legal effect of such conduct. He did not examine whether involuntary manslaughter might be the offense involved as the court did after considering the total evidence.

Whether the representation by her attorney denied the defendant effective assistance of counsel is to be determined under the standard set out in *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052, and adopted by this court in *People v. Albanese* (1984), 104 Ill. 2d 504, 525-27. A defendant must show that counsel's representation was below an objective standard of reasonableness and deprived the defendant of a trial "whose result is reliable," and that there is a reasonable probability that the result would have been different had there not been ineffective assistance of counsel. (466 U.S. 668, 687-95, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68; 104 Ill. 2d 504, 525.) Wright contends her attorney's misapprehension as to the intox-

ication defense did not meet the objective standard of reasonable competence and that, had the attorney presented the defense, she, if convicted, would have been convicted of a lesser offense than murder. The record shows the force of this contention. Wright was convicted after a bench trial and, following the argument on the defendant's post-trial motion for a new trial, the court stated that it "would have—as I said—been happy to find—make a finding of guilty of a lesser included offense such as involuntary manslaughter, but the evidence just wasn't there." Significantly, after hearing the evidence of the defendant's substance abuse and the testimony of Dr. Senay at the evidentiary hearing on the defendant's post-conviction petition, the court stated that "the outcome would have been different, and I can say with a certainty because I heard the case, the outcome would have been different had I heard the evidence that I heard today. I would have rendered a judgment of guilty of involuntary manslaughter." The court's remarks provide a classic demonstration that but for counsel's deficient representation there would have been a different result at trial. The defendant showed she was denied the effective assistance of counsel under the standard announced in *Strickland* and followed by our courts.

For the reasons given, the judgment of the appellate court, affirming the order of the circuit court, is affirmed.

*Judgment affirmed.*