THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM DEAN GARMON, Defendant-Appellant.

First District (5th Division)   No. 1—07—2892

Opinion filed September 30, 2009.

Michael J. Pelletier, Patricia Unsinn, and Stephanie L. Horten, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (James E. Fitzgerald, Annette Collins, and Mikah Soliunas, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE TOOMIN delivered the opinion of the court:

In this matter of first impression, we determine the quantum of

evidence necessary to sustain a charge of receiving stolen property based upon a law enforcement officer's "explicit representation" that the property was stolen. Following a bench trial, defendant William Garmon was convicted of theft and sentenced to a term of 24 months' probation. On appeal, he asserts that (1) the evidence was insufficient to establish the requisite knowledge that the property he purchased was stolen; and (2) he was denied the effective assistance of counsel. For the following reasons, we affirm the judgment of the circuit court.

## BACKGROUND

In August 2005, William Garmon and his wife Rose opened the Mega-Video Store at 5224 West North Avenue in Chicago. The store sold videos and cell phones. At that time, defendant was also a homicide investigator employed by the Cook County public defender's office. Rose Garmon had worked in the cellular phone business for over seven years and also worked at the store. According to defendant, they only purchased new phones to sell in their store because, "There's nothing I can do with the phone that's stolen, that's reported stolen, or has a large balance on it." Much of the merchandise was purchased from distributors, debit collections, store closing sales, estate sales or Ebay.

In November 2005, Target loss prevention team members suspected that Mega-Video was purchasing stolen cell phones and contacted Investigator Foster Bradley of the Cook County sheriff's department to assist in their investigation. Bradley's assignment contemplated that he would work in an undercover capacity to determine whether Mega-Video would purchase stolen merchandise. Target provided new Boost phones that were "packaged" just like they came off the shelf in the store, sealed in the plastic container with the serial numbers and security tags attached.

On November 2, 2005, Investigator Bradley entered Mega-Video with a Boost mobile phone contained in a plastic bag. He approached defendant and asked if he would like to purchase the phone. After inspecting the item, defendant went to his computer to verify that the phone was not stolen. Following verification, defendant agreed to pay $35 for the phone. Although the retail value of the phone was $79.99, Bradley noticed that defendant was selling the same model of Boost phone for $99.

On November 5, 2005, Bradley returned to Mega-Video in his undercover capacity with Boost i450 and i835 phones. After some negotiations, defendant paid Bradley $60 for both phones; the retail value of each phone was $79.99 and $179.99, respectively. When Bradley asked defendant what other items he would be interested in buying, defendant asked him to get "the newest Boost camera phone."

In February 2006, Chicago police detective Milrod Sofrenovic became involved in the investigation. After learning that it had been awhile since Bradley had visited Mega-Video, Sofrenovic decided they should "freshen it with some new sales." Accordingly, on February 21, 2006, Bradley returned to Mega-Video with cell phones that were sealed with security stickers. Negotiations ensued as before and defendant then purchased the phones for $75, the total retail value of which was $199. Again, on March 3, 2006, Bradley revisited Mega-Video with two phones that had "security tags" on them; the kind that could only be removed by store employees at the time of purchase. Although defendant paid Bradley a total of $30 for both phones, the retail value was normally $59.99.

The final transaction occurred on March 31, 2006. On that occasion, Bradley entered Mega-Video with 10 Boost phones that were newly packaged with serial numbers and security tags on the items. Bradley testified that during the meeting he told defendant that "I almost got caught twice taking them," to which defendant replied, "Oh, you have been back to Target, ha." Additionally, defendant stated, "I am going to have to tell my son that works at Target to watch out for you." After inspecting the merchandise, defendant paid Bradley $200 for the lot, the total retail value of which was $619.90. Upon leaving the store, Bradley met with Sofrenovic and an agent of Target and informed them of what had occurred, including his conversation with the defendant. The team then returned to the store and arrested the defendant.

Defendant and his wife testified that during all four prior occasions preceding his arrest, he attempted to determine whether the phones had been stolen. According to Rose Garmon, by using the serial number one can either call the cell phone company or check online to verify that the phones had not been reported stolen. However, Detective Sofrenovic denied that civilians can call a number to determine whether a phone is stolen. Defendant also testified that he told Bradley he would not purchase stolen phones because they were not usable. According to defendant, a cell phone that is reported lost or stolen is locked and cannot be activated. Defendant acknowledged that he purchased all of the phones offered by Bradley at well below retail price. However, distributors generally sell the phones for much less than the retail price because retail markup on these phones is substantial.

At the close of the evidence, the court found the defendant guilty of knowingly obtaining property in the custody of a law enforcement agency which was "explicitly represented" to him by a law enforcement officer as stolen. Following the denial of posttrial motions, the

court sentenced defendant to 24 months' probation together with applicable fees and fines. Defendant now appeals.

## ANALYSIS

As noted, defendant asserts the State's evidence was insufficient to prove him guilty beyond a reasonable doubt and that he was denied effective assistance of trial counsel.

The fundamental principle has long obtained that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316, 61 L. Ed. 2d 560, 571, 99 S. Ct. 2781, 2787 (1979). The standard of review on a challenge to the sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis omitted.) *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *People v. Ward*, 215 Ill. 2d 317, 322, 830 N.E.2d 556, 559 (2005). Under this standard, the reviewing court does not retry the defendant. *People v. Ross*, 229 Ill. 2d 255, 272, 891 N.E.2d 865, 876 (2008). Rather, it is the function of the trier of fact to assess the credibility of the witnesses, to determine the appropriate weight of testimony, and to resolve conflicts or inconsistencies in the evidence. *People v. Evans*, 209 Ill. 2d 194, 211, 808 N.E.2d 939, 949 (2004); *People v. Hostetter*, 384 Ill. App. 3d 700, 711, 893 N.E.2d 313, 322 (2008). Discrepancies in a witness's testimony do not warrant reversal and minor discrepancies affect only the weight of the witness's testimony. *Hostetter*, 384 Ill. App. 3d at 711, 893 N.E.2d at 322. Ultimately, a criminal conviction will not be set aside on appeal unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. *People v. Brown*, 185 Ill. 2d 229, 247, 705 N.E.2d 809, 817 (1998).

■ In the instant case it was incumbent upon the State to prove the two essential elements of theft, " 'a proscribed act and the requisite intent or knowledge.' " *People v. McCormick*, 92 Ill. App. 2d 6, 11, 235 N.E.2d 832, 835 (1968), quoting *People v. Jackson*, 66 Ill. App. 2d 276, 279, 214 N.E.2d 316, 318 (1966). A person performs the requisite act when he or she "[o]btains or exerts control over property in the custody of any law enforcement agency." 720 ILCS 5/16—1(a)(5) (West 2006). In the case *sub judice*, the parties have raised no issue as to the proscribed act.

In addition to proof of the *actus reus*, the State must also establish that defendant possessed the required mental state of knowledge. An

offender's knowledge of the theft need not be actual or positive knowledge, which one acquires by personal observation of the fact. It is sufficient if the circumstances accompanying the transaction "were such as to make the defendant believe the goods had been stolen." *People v. Stewart*, 20 Ill. 2d 387, 392, 169 N.E.2d 796, 799 (1960). It is therefore axiomatic that "[d]irect proof of guilty knowledge and the intent to deprive the owner from again possessing goods stolen from him is not necessary." *McCormick*, 92 Ill. App. 2d at 14, 235 N.E.2d at 836 (holding guilty knowledge and intent were established where business deal was "made in a tavern, at nighttime, from a casual acquaintance, who was not asked, and who did not produce proof that he was rightfully in possession of the merchandise offered for sale").

In the instant case, the required *mens rea* of knowledge impacting our consideration is twofold, there must be a showing that one knowingly obtained or controlled the property and that the offender knew the property was stolen based on an explicit representation. 720 ILCS 5/16—1(a)(5)(A) (West 2006). The knowledge requirement must also be coupled with the required intent generic to all forms of theft, which envisions that the offender "[i]ntends to deprive the owner permanently of the use or benefit of the property." 720 ILCS 5/16—1(a)(5)(A) (West 2006).

In analyzing the mental state of the particular statute we confront here, our task appears to address a question of first impression under Illinois law. The genesis of this unique species of theft was articulated in *People v. Zaremba*:

> "Section 16—1(a)(5) of the theft statute, the section at issue in this case, was added to the theft statute in 1989. (See Pub. Act 85—1296, eff. January 1, 1989.) The legislative debates establish that section 16—1(a)(5) was enacted for the purpose of enabling law enforcement officers to conduct undercover operations aimed at breaking up fencing operations. As explained by Representative Countryman, section 16—1(a)(5) was intended to permit police to 'take merchandise, *** go to these fencing operations and represent it to be stolen and of course then sell it at some greatly discounted price and be able to break up these fencing operations.' 85th Ill. Gen. Assem., House Debates, June 15, 1988, at 21-22." *People v. Zaremba*, 158 Ill. 2d 36, 40, 630 N.E.2d 797, 798-99 (1994).

In *Zaremba*, our supreme court found section 16—1(a)(5) to be unconstitutional for lack of a culpable mental state. *Zaremba*, 158 Ill. 2d at 43, 630 N.E.2d at 800. Notably, in the following year, the statute was amended to provide the requisite *mens rea* and in its present form we examine those requirements. 720 ILCS 5/16—1(a)(5) (West 1996), as amended by Pub. Act 89—377, §15, eff. August 18, 1995.

However, our inquiry is necessarily impacted by the dearth of guiding Illinois precedent.

Defendant suggests that *Ridle v. Sprayrite Manufacturing Co.*, 198 Ill. App. 3d 597, 555 N.E.2d 1272 (1990), a case that is not factually related, may be helpful in our inquiry. In *Ridle*, the Third District, in interpreting a provision of the Uniform Commercial Code extending the limitation period where a warranty "explicitly" extends to future performance of the goods, determined the meaning of the word "explicit" as follows:

> " 'Explicit is defined *** as "not implied merely, or conveyed by implication; distinctly stated plain in language; clear; not ambiguous; express; unequivocal." ' *Wilson*, 21 Ill. App. 3d at 872, 315 N.E.2d at 583, quoting *Binkley v. Teledyne Mid-America Corp.* (E.D. Mo. 1971), 333 F. Supp. 1183, *aff'd* (8th Cir. 1972), 460 F.2d 276." *Ridle*, 198 Ill. App. 3d at 601, 555 N.E.2d at 1274.

However, we find the decisions of courts in Texas and Ohio more instructive as their mental state requirements are substantially similar to our own. Section 31.03(b)(3) of the Texas Penal Code provides in pertinent part:

> "(b) Appropriation of property is unlawful if:
>
>                       \* \* \*
>
> (3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another." Tex. Penal Code Ann. §31.03(b)(3) (Vernon 2003).

Section 2913.51 of the Ohio Revised Code likewise provides:

> "(B) It is not a defense to a charge of receiving stolen property in violation of this section that the property was obtained by means other than through the commission of a theft offense if the property was explicitly represented to the accused person as being obtained through the commission of a theft offense." Ohio Rev. Code 2913.51(B) (2006).

Notably, under Texas law, "explicit" is defined as "[n]ot obscure or ambiguous; having no disguised meaning or reservation; clear in understanding." *Allen v. State*, 849 S.W.2d 838, 840 (Tex. App. 1993), citing Black's Law Dictionary 519 (5th ed. 1979). Texas courts have repeatedly upheld convictions where the use of slang terms was found to constitute an explicit representation by law enforcement officers that items were stolen. *Flowers v. State*, 843 S.W.2d 38, 39 (Tex. Crim. App. 1992); *Allen*, 849 S.W.2d at 841. In *Flowers*, an officer testified that he told the defendant the equipment was " 'ripped-off' from Texaco" and that " 'ripped-off' meant stolen." *Flowers*, 843 S.W.2d at 39.

Likewise, in *Allen*, the police informant testified that she told defendant, " 'I don't want the price from the store they are boosted out of,' " further explaining that " 'boost' was a common expression for stealing and everyone understood its meaning." *Allen*, 849 S.W.2d at 840. Accordingly, the court determined that a "representation involving only slang terminology can be an explicit representation." (Emphasis omitted.) *Allen*, 849 S.W.2d at 841.

Ohio courts have employed similar analysis that where "the goods are not actually obtained by theft, the issue becomes one of interpreting the evidence to determine whether it satisfies the requirement of an 'explicit representation.' " *State v. Awad*, 2005—Ohio—5861, at ¶11. In a case bearing marked similarity to the facts *sub judice*, an undercover detective fulfilled his offer to provide stolen furniture by bringing to the defendant's home "a brand new loveseat, still wrapped in plastic with a tag for $1,155," which the defendant purchased for $200. *State v. Strunk*, 2007—Ohio—683, at ¶4. During yet a second transaction, the detective brought another love seat, "brand new with a $1,169 price tag," for which the defendant's wife wrote a check for $300. *Strunk*, 2007—Ohio—683, at ¶6. The reviewing court reasoned that the jury could have found an explicit representation occurred given that the love seat price tags showed a value substantially higher than what defendant actually paid. Additionally, the detective told the defendant the love seats were "hot," that he obtained them "because he had a friend 'on the inside' at a furniture store and that he took the loveseat 'right off the back of a truck.' " *Strunk*, 2007—Ohio—633, at ¶38. Accordingly, the court concluded that the jury's determination that defendant was guilty of receiving stolen property was not against the manifest weight of the evidence. *Strunk*, 2007—Ohio—683, at ¶39.

■ In the case *sub judice*, Investigator Bradley conceded that he at no time referred to the phones as stolen when interacting with defendant. Nonetheless, Bradley also testified that he told defendant that "I almost got caught twice taking them" and that defendant said, "oh, you have been back to Target, ha." Additionally, defendant stated, "I am going to have to tell my son that works at Target to watch out for you." Although the word "stolen" was not used during the entirety of this transaction, these veiled references to stealing could be inferred by the trier of fact as an explicit representation, in the same manner that slang references to stealing have been similarly determined by other jurisdictions. See *Flowers*, 843 S.W.2d at 39; *Allen*, 849 S.W.2d at 841.

We further perceive that evidence of an explicit representation may be gleaned from the totality of the circumstances encompassing delivery of the phones. On the four previous encounters at Mega-Video, Bradley brought phones that were "packaged just like they came off the shelf in the store, sealed in the plastic container with the serial numbers and security tags attached." Progressively, on the final occasion, Bradley testified that he brought 10 phones in a black plastic bag, in new packages sealed with serial numbers and security tags on the back. Thus, crediting Bradley's "admissions" that he almost got caught twice, coupled with the packaging of the phones and the disparity between defendant's purchase price and the retail value, a reasonable trier of fact could well determine that defendant received explicit representations that the phones were stolen.

In focusing on the purported paucity of evidence of the required mental state, defendant places significant reliance on *People v. Gordon*, 204 Ill. App. 3d 123, 561 N.E.2d 1164 (1990). In *Gordon*, the defendant's conviction was reversed where the court found defendant's prior permissive use of the vehicle negated guilty knowledge the car was stolen. *Gordon*, 204 Ill. App. 3d at 127, 561 N.E.2d at 1166. The reviewing court reasoned that Gordon's mere possession of the vehicle did not establish knowledge that the car was stolen given that he was asked to repair the car radio, the event occurred in broad daylight, and the owner stated he would not have reported the car stolen if he had been aware of who possessed it. *Gordon*, 204 Ill. App. 3d at 128, 561 N.E.2d at 1167.

Conversely, in the case at bar, there is no argument that mere possession is the basis for the court's finding that defendant possessed the requisite guilty knowledge. Here, defendant in the final transaction purchased 10 phones from the investigator for less than one-third of their retail value. Moreover, the evidence depicts an explicit representation by the investigator sufficient to impart knowledge that the phones were in fact stolen. We find that this evidence satisfies the twofold knowledge requirement. Additionally, given defendant's testimony that he planned to sell the phones at his Mega-Video store, an intent to permanently deprive the owner could likewise be found.

Defendant further maintains that based on his and his wife's testimony, regarding their previous actions of appropriately checking if the phones were stolen, the court erred in assessing the credibility of witnesses. We disagree. Although the trial judge could well determine that assessments of credibility favored the State's witnesses, that determination was well within the province of the court. See *Jackson*, 443 U.S. at 319, 61 L. Ed. 2d at 573, 99 S. Ct. at 2789; *Hostetter*, 384 Ill. App. 3d at 711, 893 N.E.2d at 322. Neither the

discrepancies between the witness's testimony nor the evidence offered by the defense raises a reasonable doubt of the defendant's guilt. Accordingly, we reject defendant's challenge to the sufficiency of the evidence.

■ We next consider defendant's claim that he was denied the effective assistance of trial counsel. The principle is deeply rooted in our jurisprudence that defendants in a criminal case enjoy the fundamental right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685, 80 L. Ed. 2d 674, 691-92, 104 S. Ct. 2052, 2063 (1984); *People v. Jackson*, 205 Ill. 2d 247, 258-59, 793 N.E.2d 1, 9 (2001); see U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §8. Notwithstanding the efficacy of this constitutional mandate, the *Strickland* Court recognized that analytical hindsight demonstrates:

"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *** [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' [Citation.]" *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065.

Claims of counsel's ineffectiveness are evaluated under the prevailing two-pronged *Strickland* test to determine (1) if counsel's performance was deficient and (2) whether there is a reasonable probability that the result of the trial would have been different but for counsel's deficiencies. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064; *People v. Chandler*, 129 Ill. 2d 233, 242, 543 N.E.2d 1290, 1293 (1989). To satisfy the deficiency requirement, "defendant must show that his counsel's performance, objectively measured against prevailing professional norms, was so deficient that counsel was not functioning as the 'counsel' guaranteed by the sixth amendment." *Jackson*, 205 Ill. 2d at 259, 793 N.E.2d at 9. To establish the prejudice prong, the defendant must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Jackson*, 205 Ill. 2d at 259, 793 N.E.2d at 9. The prejudice prong is not simply an "outcome-determinative" test but, rather, may be satisfied if the defendant can show that counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. *Jackson*, 205 Ill. 2d at 259, 793 N.E.2d at 9.

In the case at bar, defendant argues that he was denied effective assistance where defense counsel (1) misapprehended the law of entrapment; (2) failed to object to the hearsay testimony of Detective Sofrenovic concerning the events of March 31, 2006; (3) failed to object to Sofrenovic's testimony regarding defendant's lack of a second-hand-dealer's business license; and (4) misapprehended a factual matter relating to the State's photographic evidence in closing arguments.

Defendant boldly claims that trial counsel operated under a misapprehension of the law, to wit: that defendant could deny knowing that the cell phones were stolen yet rely on the affirmative defense of entrapment. Generally, counsel's choice of an appropriate defense is a matter of trial strategy or tactics not reviewable under the *Strickland* test, unless that choice is based upon a misapprehension of the law. *Strickland*, 466 U.S. at 689-90, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065-66. See also *People v. Wright*, 111 Ill. 2d 18, 26-27, 488 N.E.2d 973, 977 (1986). Misapprehension of a defense theory may be shown where evidence is presented in such a manner that the jury is left with no choice but to convict defendant of the offenses charged (*Chandler*, 129 Ill. 2d at 248, 543 N.E.2d at 1296), or where counsel fails to offer evidence that would reduce the grade of homicide the defendant faced (*Wright*, 111 Ill. 2d at 30-31, 488 N.E.2d at 979-80).

In *Chandler*, a murder prosecution, our supreme court concluded that the defendant was denied effective assistance of counsel when his attorney failed to cross-examine key prosecution witnesses, poorly cross-examined other witnesses, and neglected to call any witnesses despite his assertion in his opening statement that the defendant would testify and explain his actions before the jury. *Chandler*, 129 Ill. 2d at 249, 543 N.E.2d at 1296. Counsel was impelled to make these decisions because he labored under the erroneous belief that his client could not be found guilty of murder if he did not inflict the fatal wounds to the victim, notwithstanding that the State's theory of prosecution was accountability as well as felony murder. *Chandler*, 129 Ill. 2d at 247-48, 543 N.E.2d at 1296. Given counsel's misunderstanding of the law coupled with his concession in closing argument that his client had entered the victim's house, our supreme court found that, "[b]y failing to comprehend the law of accountability and felony murder, counsel's strategy and actions amounted to no real defense at all. The prosecution's case, therefore, was not subject to meaningful adversarial testing, and defendant was deprived of a fair trial." *Chandler*, 129 Ill. 2d at 249, 543 N.E.2d at 1296.

In *Wright*, defense counsel failed to raise the defense of intoxication and defendant was found guilty of the charged offense of murder. *Wright*, 111 Ill. 2d at 30-31, 488 N.E.2d at 979. Following the presenta-

tion of evidence detailing defendant's substance abuse during the hearing on defendant's postconviction petition, the trial judge remarked that had this defense been presented at trial, " 'I would have rendered a judgment of guilty of involuntary manslaughter.' " *Wright*, 111 Ill. 2d at 31, 488 N.E.2d at 979. The court's statement provided a classic demonstration that but for counsel's deficient representation, a different result would have obtained. *Wright*, 111 Ill. 2d at 31, 488 N.E.2d at 979-80. Thus, under *Strickland*'s prejudice prong, the defendant was denied effective assistance of counsel. *Wright*, 111 Ill. 2d at 31, 488 N.E.2d at 979.

Although we concur in defendant's argument that misapprehension of a defense theory may well meet *Strickland*'s standard of ineffectiveness, we do not perceive that trial counsel presented incompatible defenses on defendant's behalf. In the proceedings below, counsel cross-examined the State's witness, offered defense witnesses to provide an alternative view of events and premised his defense on the State's failure to establish the *mens rea* required to prove the species of theft charged. During posttrial motions, counsel persisted in his argument that defendant lacked a culpable mental state. Although counsel's primary argument essentially negated the viability of an entrapment defense, he nonetheless raised the issue of police inducement in the context of entrapment as an alternative approach upon rejection of his primary argument. When called on the apparent inconsistency in his presentation by the court, counsel rhetorically stated that defendant does not need to admit to the crime, but needs only to admit the mental state. Counsel's understanding may well have constituted a misapprehension of the law of entrapment, as "[i]t is well established that one may not deny the commission of an offense and at the same time claim entrapment." *People v. Arriaga*, 92 Ill. App. 3d 951, 954, 416 N.E.2d 418, 421 (1981). The trial court nonetheless rejected the assertion that the evidence manifested "a situation where the [defendant] was entrapped." As the court noted, it did not "believe the government's action *** implanted in the mind of an innocent person here."

We are mindful that *Strickland*'s prejudice prong requires a defendant to demonstrate a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *People v. Eddmonds*, 143 Ill. 2d 501, 511, 578 N.E.2d 952, 956 (1991). Yet, we perceive from the trial court's comments that had the defense of entrapment been raised and appropriately argued by counsel, the evidence simply failed to support that defense theory. Thus, offering entrapment as a defense would have yielded no greater

likelihood of success than defendant's challenge to the mental state offered at trial. Accordingly, we reject defendant's claim of ineffectiveness on this ground.

The defendant next faults counsel for failing to object to the hearsay testimony of Detective Sofrenovic that defendant purchased property after being told it was stolen. Although an out-of-court statement offered for the truth of the matter asserted constitutes hearsay, extrajudicial statements may be admissible for other purposes. *People v. Moss*, 205 Ill. 2d 139, 159, 792 N.E.2d 1217, 1229 (2001). Our supreme court has held that "a police officer may recount the steps taken in the investigation of a crime, and may describe the events leading up to the defendant's arrest, where such testimony is necessary and important to fully explain the State's case to the trier of fact." *People v. Simms*, 143 Ill. 2d 154, 174, 572 N.E.2d 947, 954-55 (1991). Here, we are not persuaded that Sofrenovic's statement was offered to prove that defendant knew he was purchasing stolen property; rather, we discern that the purpose of the evidence was to explain the events that immediately followed, specifically the team's entry into Mega-Video to arrest defendant. Even assuming the testimony indeed was offered to prove the truth of the matter asserted, "Admission of hearsay evidence is harmless error if there is no reasonable possibility the verdict would have been different had the hearsay been excluded." *People v. McCoy*, 238 Ill. App. 3d 240, 249, 606 N.E.2d 245, 251 (1992) (finding admission of hearsay by a police officer that included the substance of a conversation was harmless error, when other witnesses testified to the same evidence). Confrontation errors, although constitutional violations, do not automatically warrant reversal. *People v. Johnson*, 116 Ill. 2d 13, 28, 506 N.E.2d 563, 570 (1987). Thus, even were we to credit defendant's argument that Sofrenovic's recital of defendant's purported admission constitutes hearsay, we conclude that the admission of this evidence was harmless error because there is no reasonable possibility that the result would have differed had this testimony been excluded. See *McCoy*, 238 Ill. App. 3d at 249, 606 N.E.2d at 251. Again, defendant's claim fails to satisfy *Strickland*'s prejudice requirement.

Defendant's third claim of ineffectiveness stems from counsel's failure to object to a lack of foundation for Detective Sofrenovic's testimony that Mega-Video did not have a second-hand-dealer's license. We note that although defense counsel objected to this line of questioning based on relevance, his objection was overruled. The State contends that the foundational requirements for Sofrenovic's testimony were met by his explanation that, as a property crimes detective, part of his specific duties included checking out licenses on a

particular store and that on March 31, 2006, defendant's store did not have any type of second-hand license allowing defendant to sell used merchandise from private sellers. Thus, the State posits that the information was within the detective's personal knowledge and was not hearsay. See *People v. Pryor*, 181 Ill. App. 3d 865, 870, 537 N.E.2d 1141, 1145 (1989). Additionally, the State maintains that defense counsel's objection on grounds of relevance was a proper objection. Interestingly, defendant asserts that the testimony would only be admissible under the business record exception assuming a proper foundation has been laid. Notably, given that both parties offer differing arguments as to the admissibility of this testimony, we discern that the choice between objections constitutes a matter of trial strategy or tactics. As the Supreme Court stated, "[t]here are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 695, 104 S. Ct. at 2065. Defense counsel's decision to make an objection on relevancy grounds rather than on hearsay does not constitute defective performance. Defendant's ineffectiveness claim must therefore fail.

Defendant's fourth allegation of ineffective assistance is based on trial counsel's purported misapprehension of a factual matter in closing arguments regarding photographic evidence. Although the photograph at issue depicted phones with Target stickers on them, Investigator Bradley testified that the security tags were placed on the phones only after the photograph was taken. In closing arguments, defense counsel stated, "there is nothing on these photos that [Target tags] were there." The trial judge assumed that defense counsel argued "that the photograph do [*sic*] not depict in anyway that phones belonged to Target. I disagree[;] the photographs speak for themselves." Considering the circumstances, although defense counsel's characterization of the photograph may have been confusing, Bradley's testimony regarding the Target stickers and subsequent placement of the security tags clearly added to that confusion.

We recognize a closing argument in a criminal case is a crucial component of the adversarial nature of the proceedings. *Herring v. New York*, 422 U.S. 853, 862, 45 L. Ed. 2d 593, 600, 95 S. Ct. 2550, 2555 (1975). Nonetheless, defendant has failed to demonstrate that counsel's appraisal of the photograph during closing argument was determinative of the outcome of the trial. The trial judge stated that "there is certainly enough there that tells me that defendant knew that he was buying stolen phones." Yet, the photographic evidence, although important, was not the only evidence in the case against defendant. While defense counsel may have injected some level of

confusion by his commentary, we reject the assertion that counsel's appraisal of this evidence satisfied *Strickland*'s prejudice prong. See *People v. Kuhns*, 372 Ill. App. 3d 829, 835, 866 N.E.2d 1181, 1186 (2007) (holding defense counsel may have given a deficient closing argument but defendant's claim of ineffective assistance of counsel failed the prejudice prong due to other evidence of guilt).

In conclusion, defendant argues that while each instance of counsel's claimed ineffectiveness prejudiced him individually, taken together, the cumulative effects was even more egregious. Although we recognize that cumulative error may well deprive a defendant of a fair trial, there must first be a showing of individual error. Here, however, the error defendant complains of was essentially refined to differing methods of trial strategy, albeit unsuccessful ones. Defendant has failed to show that any of counsel's errors were so egregious, and his performance so deficient, that he did not function as the counsel guaranteed by the sixth amendment. *People v. Johnson*, 218 Ill. 2d 125, 143-44, 842 N.E.2d 714, 725 (2005). Nor has defendant demonstrated that there is a reasonable probability that, but for counsel's errors, the results of the proceeding would have been different. We therefore reject the claim of cumulative error.

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and grant the State's motion for fees in the amount of $100 for defending this appeal and $50 for defending oral arguments.

Affirmed.

TULLY and FITZGERALD SMITH, JJ., concur.