STATE OF NORTH CAROLINA v. ABDELFETTAH LOUALI

No. COA10-1590

(Filed 16 August 2011)

**Possession of Stolen Property—receiving stolen goods—explicitly represented as stolen—specific words not required**

The trial court did not err by denying defendant's motion to dismiss the charge of receiving stolen goods. There was sufficient evidence that property found in defendant's possession was explicitly represented by a law enforcement agent as being stolen as required by N.C.G.S. § 14-71(b), and specific words were not required to be used.

Appeal by defendant from judgment entered 1 July 2010 by Judge Nathaniel J. Poovey in Mecklenburg County Superior Court. Heard in the Court of Appeals 8 June 2011.

*Attorney General Roy A. Cooper, by Assistant Attorney General Rufus C. Allen, for the State.*

*Tin Fulton Walker & Owen, PLLC, by Noell P. Tin and Matthew G. Pruden, for defendant-appellant.*

BRYANT, Judge.

Where there was sufficient evidence that property found in defendant's possession was explicitly represented by a law enforcement agent as being stolen, an essential element of N.C. Gen. Stat. § 14-71(b), the trial court did not err by denying defendant's motion to dismiss.

*Facts and Procedural History*

On 28 October 2008, Abdelfettah Louali (defendant) was arrested and charged with receiving stolen goods in violation of N.C. Gen. Stat. § 14-71. On 19 April 2010, a grand jury returned a superceding indictment charging defendant with receiving stolen property, pursuant to a violation of N.C.G.S. § 14-71(b).

Defendant was tried before a jury beginning on 30 June 2010. The State's evidence presented at trial indicated the following, in pertinent part: Officer David T. LaFranque, II, of the Charlotte Mecklenburg Police Department (CMPD), testified that on 28 October 2008, he participated in an undercover operation. Officer LaFranque testified that he entered Global Electronic Center (GEC), a private business, dressed in plain clothing with two laptop computers inside a black bag, both owned by the CMPD. Upon entering GEC, Officer LaFranque saw a customer and two males standing behind the counter. Officer LaFranque made an in-court identification of defendant as being one of the males standing behind the counter that day and described the other male as wearing a black shirt.

Officer LaFranque approached the man in the black shirt placed the laptops on the countertop, and told the man he had laptops for sale. Defendant stood a short distance away, within earshot, from this exchange. Officer LaFranque told the man in the black shirt that his "nephews in the nearby neighborhood told [him] that [GEC] buy[s] stolen property, stolen laptops." While the man wearing a black shirt examined the laptops, Officer LaFranque stated "[T]his guy that owns

a business, he left the door open, the back door open for the business up the street; I ran in and just took [the laptops]." The man in the black shirt and defendant began conversing with one another in a language other than English.

Thereafter, defendant asked Officer LaFranque for the make and model of the two laptops, as well as how much money he wanted for them. Officer LaFranque offered to sell the laptops for $60.00 each. Two more times Officer LaFranque stated to both defendant and the man in the black shirt that "this stupid guy kept leaving the door open, I kept running in the back of it and taking laptops." Defendant offered to purchase both laptops and gave Officer LaFranque $80.00 in exchange for the laptops.

After giving defendant the laptops, Officer LaFranque was exiting GEC when the following occurred:

> [Officer LaFranque:] I pretty much took the [black] bag [the laptops came in]. And after we made the deal, I started to walk out and the defendant asked me for the bag. He said, Can I have the bag? I said, Well, do you want me to get more computers? If the guy keeps leaving the door open, I can get some more. And he says, Okay, yeah, yeah, take the bag. I told him I would need the bag to get them.

> [The State:] To get the laptops?

> [Officer LaFranque:] To get some more, yes.

Following this exchange, Officer LaFranque exited the store.

At the close of the State's evidence, defendant made a motion to dismiss the charge under N.C.G.S. § 14-71 arguing that the evidence presented did not state that the undercover officer, Officer LaFranque, explicitly represented to defendant that the goods were stolen. The trial court denied defendant's motion to dismiss. On 1 July 2010, defendant was found guilty of feloniously receiving stolen goods and was sentenced to six to eight months in the custody of the North Carolina Department of Corrections. Defendant appeals.

Defendant's sole argument on appeal is that the trial court erred in denying his motion to dismiss the charge of receiving stolen goods in violation of N.C.G.S. § 14-71(b). Defendant contends that there was insufficient evidence "property was explicitly presented to [defendant] by a law enforcement agent as being stolen," an essential element to a conviction pursuant to N.C.G.S. § 14-71(b). Defendant

argues that Officer LaFranque failed to explicitly represent to defendant that the laptops were stolen, never referring to the laptops as being "stolen," "nor even us[ing] the words 'stole' or 'stolen' when discussing the laptops." Defendant asserts that "at most, Officer LaFranque implied that the laptops were stolen" which was obscure, ambiguous, and consisted of a disguised meaning or reservation.

"The denial of a motion to dismiss for insufficient evidence is a question of law . . . which this Court reviews *de novo*[.]" *State v. Bagley*, 183 N.C. App. 514, 523, 644 S.E.2d 615, 621 (2007) (citations omitted). "In ruling on a defendant's motion to dismiss, the trial court should consider if the state has presented substantial evidence on each element of the crime and substantial evidence that the defendant is the perpetrator." *State v. Sloan*, 180 N.C. App. 527, 531, 638 S.E.2d 36, 39 (2006) (citation and quotations omitted). "As to whether substantial evidence exists, the question for the trial court is not one of weight, but of the sufficiency of the evidence. Substantial evidence is that amount of relevant evidence necessary to persuade a rational juror to accept a conclusion." *State v. Harris*, 361 N.C. 400, 402, 646 S.E.2d 526, 528 (2007) (internal citations omitted). "The evidence should be viewed in the light most favorable to the [S]tate, with all conflicts resolved in the [S]tate's favor . . . If substantial evidence exists supporting defendant's guilt, the jury should be allowed to decide if the defendant is guilty beyond a reasonable doubt." *Sloan*, 180 N.C. App. at 531, 638 S.E.2d at 39 (citation and quotations omitted).

> Statutory interpretation begins with the cardinal principle of statutory construction that the intent of the legislature is controlling. In ascertaining the legislative intent, courts should consider the language of the statute, the spirit of the statute, and what it seeks to accomplish. Where the statutory language is clear and unambiguous, the Court does not engage in judicial construction but must apply the statute to give effect to the plain meaning and definite meaning of the language.

*State v. Stanley*, ___ N.C. App. ___, ___, 697 S.E.2d 389, 390 (2010) (citation omitted). The trial court entered judgment against defendant for violating N.C.G.S. § 14-71(b), which reads:

> If a person knowingly receives or possesses property in the custody of a law enforcement agency that was *explicitly represented* to the person by an agent of the law enforcement agency as stolen, the person is guilty of a Class H felony and may be indicted, tried, and punished in any county in which the person received or possessed the property.

N.C.G.S. § 14-71(b) (2009) (emphasis added). N.C.G.S. § 14-71 was amended in 2007 to include section (b). 2007 N.C. Sess. Laws 373. We note that although the phrase "explicitly represented" is not necessarily ambiguous or unclear, it is nevertheless, not defined in Chapter 14 of our General Statutes. Therefore, we must seek the definition of "explicitly represented" which is in accord with the General Assembly's intent for N.C.G.S. § 14-71(b).

> The legislative intent will be ascertained by such *indicia* as the purposes appearing from the statute taken as a whole, the phraseology, the words ordinary or technical, the law as it prevailed before the statute, the mischief to be remedied, the remedy, the end to be accomplished, statutes *in pari materia*, the preamble, the title, and other like means . . . .

*State v. White*, 58 N.C. App. 558, 559, 294 S.E.2d 1, 2 (1982) (citations and internal quotation marks omitted).

Prior to the addition of section (b) in 2007, N.C.G.S § 14-71 provided that

> [i]f any person shall receive any chattel, property, money, . . . the stealing or taking whereof amounts to larceny or a felony, . . . such person knowing or having *reasonable grounds to believe* the same to have been feloniously stolen or taken, he shall be guilty of a Class H felony, and may be indicted and convicted . . . and such receiver shall be punished as one convicted of larceny.

N.C.G.S. § 14-71 (2003) (emphasis added). By including the phrase "reasonable grounds to believe" that the property received was stolen, the General Assembly necessarily made guilty knowledge an essential element of an offense under N.C.G.S. § 14-71. *See State v. Allen*, 45 N.C. App. 417, 421, 263 S.E.2d 630, 633 (1980) (stating that "[f]urthermore, guilty knowledge may be inferred from the circumstances."); *State v. Haywood*, 297 N.C. 686, 690, 256 S.E.2d 715, 717 (1979) (holding that the "[d]efendant's knowledge or reasonable grounds to believe that the goods were stolen can be implied from his willingness to sell the [good] at a mere fraction of its actual value."); *State v. Fearing*, 304 N.C. 471, 478-9, 284 S.E.2d 487, 491-2 (1981) (noting that, under N.C.G.S. § 14-71, "while it is true that it is not necessary that the person from whom the goods are received shall state to the person charged that the goods were stolen, . . . it is necessary to establish either actual or implied knowledge on the part of the person charged of the facts that the goods were stolen.")

We believe that with the addition of section (b), the General Assembly intended to require more than guilty knowledge to support conviction under N.C.G.S. § 14-71(b). The addition of section (b) supports the same type of conviction characterized under section (a) but also provides for circumstances where a person receives or possesses property that is "explicitly represented" as stolen by a law enforcement agency or a person authorized to act on behalf of an law enforcement agency. However, we reject defendant's argument that specific words are required to be spoken by an agent of the law enforcement agency in order to fulfill the "explicitly represented" element of section (b).

An examination of the ordinary meanings of the words at issue reveals that "explicit" is defined as "[f]ully and clearly expressed." *The American Heritage College Dictionary* 482 (3rd ed. 1993). A "representation" is defined as "[a] presentation of fact—either by words or conduct—made to induce someone to act[.]" *Black's Law Dictionary* 1415 (9th ed. 2009). We do not believe the statute requires the strict interpretation defendant advances as he argues there was no explicit representation made because Officer LaFranque "never referred to the laptops as being 'stolen,' nor even used the words 'stole' or 'stolen' when discussing the laptops." On the contrary, when taken in context, the ordinary meanings of this particular phrase in N.C.G.S. § 14-71(b) merely requires that a person knowingly receives or possesses property that was clearly expressed, either by words or conduct, as constituting stolen property.

In support of our determination that in enacting N.C.G.S. § 14-71(b), the General Assembly did not intend that specific words be required before one could be prosecuted under that statute, we look to how other states have viewed the words "explicitly represented" in similar theft statutes.

In *Allen v. State*, —— Tex. App. ——, 849 S.W.2d 838 (1993), the defendant was found guilty of theft by receiving property under TEX. PENAL CODE ANN. § 31.03(a) and (b) (Vernon 1989), which read:

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

. . .

(3) property in the custody of any law enforcement agency was *explicitly represented* by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

TEX. PENAL CODE ANN. § 31.03(a) and (b) (Vernon 1989) (emphasis added). The defendant argued that the merchandise he purchased from a law enforcement agent was not explicitly represented as being stolen property. The law enforcement agent stated to the defendant that, "It's Christmas time, there is [sic] not too many people *boosting* like I am right now due to the holidays." *Id.* at 4, 849 S.W.2d at 840 (emphasis added). The state in *Allen* introduced to the jury, Webster's New Collegiate Dictionary's definition of "boost" as slang for "steal" or "shoplift." *Id.* The Court of Appeals of Texas held that "a representation involving only slang terminology can be an *explicit* representation." *Id.* at 6-7, 849 S.W.2d at 841.

In *People v. Garmon*, 394 Ill. App. 3d 977, 916 N.E.2d 1191 (2009), the defendant was convicted of theft for "knowingly obtaining property in the custody of a law enforcement agency which was 'explicitly represented' to him by a law enforcement officer as stolen" pursuant to 720 ILCS 5/16-1(a)(5)(A) (West 2006). *Id.* at 980, 916 N.E.2d at 1195. The undercover law enforcement officer in *Garmon* presented to the defendant multiple cellular phones over a period of time that the defendant purchased. The undercover law enforcement officer testified that he told the defendant "I almost got caught twice taking them." *Id.* at 984, 916 N.E.2d at 1198. The Appellate Court of Illinois held that "[a]lthough the word 'stolen' was not used during the entirety of [the defendant's] transaction, . . . veiled references to stealing could be inferred by the trier of fact as an explicit representation, in the same manner that slang references to stealing have been similarly determined by other jurisdictions." *Id.*

Similarly, we conclude that N.C.G.S. § 14-71(b) does not require that specific words be used by an agent of or person authorized to act on behalf of a law enforcement agency to represent property as stolen. In the case *sub judice*, Officer LaFranque stated to the man in the black shirt, within earshot of defendant, that his "nephews in the nearby neighborhood told [him] that [GEC] buy[s] stolen property, stolen laptops." (T 49) Further, Officer LaFranque directly reminded defendant on two occasions that "this stupid guy kept leaving the door open, [and] I kept running in the back of it and taking laptops." (T 53) After the exchange of money for the laptops, Officer LaFranque also told defendant that he could get more laptops.

**STATE v. LOUALI**

[215 N.C. App. 176 (2011)]

We hold that the words used by Officer LaFranque in defendant's presence constituted language that could reasonably be determined to explicitly represent that the items discussed had been stolen. Therefore, there was sufficient evidence that the laptops were explicitly represented to defendant to have been stolen. The trial court did not err in denying defendant's motion to dismiss the charge of receiving stolen goods in violation of N.C.G.S. § 14-71(b). Accordingly, defendant's argument is overruled.

No error.

Judges GEER and BEASLEY concur.