# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Williams*, 2012 IL App (1st) 100126

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD WILLIAMS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-10-0126 |
| Filed | August 14, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's contention that his defense counsel was ineffective was rejected, but the sentences imposed for his convictions for aggravated vehicular hijacking and armed robbery were vacated and resentencing was ordered due to the inclusion of the 15-year firearm sentencing enhancements that had been declared unconstitutional in *Hauschild* and *Andrews*. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-13744; the Hon. Stanley Sacks, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |

| Counsel on Appeal | Michael J. Pelletier, Alan D. Goldberg, and Caroline E. Bourland, all of State Appellate Defender's Office, of Chicago, for appellant. |
| | |
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Joan F. Frazier, and Ramune Rita Kelecius, Assistant State's Attorneys, of counsel), for the People. |
| | |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Quinn and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a bench trial in the circuit court of Cook County, defendant Leonard Williams was convicted of armed robbery, aggravated vehicular hijacking and aggravated battery. Subsequently, he was sentenced to concurrent terms of 22 years of imprisonment for armed robbery and aggravated vehicular hijacking, and 5 years of imprisonment for aggravated battery. On direct appeal, the defendant argues that: (1) defense counsel provided ineffective assistance of counsel at every stage of the criminal proceedings; and (2) a new sentencing hearing is warranted where the 15-year sentencing enhancements imposed by the trial court were void or, in the alternative, the sentence imposed should be reduced. For the following reasons, we affirm the judgment of the circuit court of Cook County as to the defendant's convictions for armed robbery, aggravated vehicular hijacking and aggravated battery. However, we vacate the sentences for armed robbery and aggravated vehicular hijacking and remand the cause for resentencing on those two convictions.

¶ 2                            BACKGROUND

¶ 3      On June 10, 2007, Chicago police officers responded to a call to investigate a car stripping in progress at 5345 South Hoyne Avenue in Chicago, Illinois. As a result, the police arrested the defendant, along with codefendant Courtney Robinson (codefendant Robinson), near the crime scene. Thereafter, on July 5, 2007, the defendant was charged with armed robbery (count I), aggravated vehicular hijacking (count II), aggravated unlawful use of a weapon (counts III to VI), unlawful use of a weapon by a felon (counts VII and VIII), aggravated battery (counts IX to XII), and aggravated unlawful restraint (count XIII).

¶ 4      On February 11, 2009, attorney Howard Towles[1] filed an appearance on behalf of the

---

[1]Prior to this date, the defendant was represented by two other defense attorneys (Jerry and Sheila Kalish) who withdrew from the case on September 2, 2008. Thereafter, the defendant acted

defendant in this case and in another case against the defendant.[2]

¶ 5    On April 1, 2009, defense counsel filed a "motion to suppress identification and quash arrest," which pertained to the facts of an unrelated case involving the defendant upon which the State had elected not to proceed. On May 19, 2009, defense counsel refiled a "motion to suppress identification and quash arrest" (motion to suppress), which pertained to the facts of the instant case. In the motion to suppress, defense counsel argued that at the time of the defendant's arrest, the defendant was not engaged in any illegal conduct and that no arrest warrant existed to justify his arrest. The motion to suppress further stated that the police lineup, from which one of the victims identified the defendant as the perpetrator, was unreliable, and requested that the identification be suppressed and "any arrest, charge, or evidence obtained therefrom be [q]uashed."

¶ 6    On August 3, 2009, at a hearing on the motion to suppress, the defendant presented the testimony of two witnesses–Officer Timothy Moran (Officer Moran) and Detective John Richter (Detective Richter). Officer Moran testified that on June 10, 2007, at 11:15 p.m., he and his partners were assigned to respond to an anonymous 911 call of a car stripping in progress at 5345 South Hoyne Avenue in Chicago, Illinois. Upon arrival at the location, Officer Moran observed, in the rear lot of an abandoned residence, a car elevated on four milk crates with its tires missing and its hood and trunk open. The police officers ran a check of the license plate of the vehicle and discovered that it was reported to have been taken in a vehicular hijacking earlier in the evening. Approximately one minute later, two black men, who were both empty-handed, walked from a nearby alleyway toward the vehicle. As the two men approached the vehicle, Officer Moran and his partners announced their presence, at which point the two men, one of whom was later identified as the defendant, fled back to the alleyway. The police officers then chased the suspects on foot. During the chase, Officer Moran observed the defendant reach into his waistband and toss "a shiny object" to the ground. Subsequently, Officer Moran apprehended the defendant and recovered a handgun, which was the "shiny object" tossed by the defendant during the chase. Although Officer Moran testified that no arrest warrant existed for the defendant, he had a "suspicion" that the defendant was armed. On cross-examination, Officer Moran testified that upon placing the defendant under arrest and mirandizing him, Officer Moran walked the defendant back to the site where the defendant had disposed of the shiny object which turned out to be a gun. Pursuant to a custodial search of the defendant's person, Officer Moran found a remote starter and car keys to the hijacked vehicle. The police officers also found a wallet, driver's license, and miscellaneous documents belonging to one of the carjacking victims, Tremon Moore (Tremon), next to the alleyway where the defendant's handgun was recovered. According to Officer Moran, the defendant was wearing a white tee-shirt, blue jeans and hair braids at the time of his arrest.

_____

*pro se* before hiring defense attorney Howard Towles, whose representation is at issue in the case at bar. References to "defense counsel" in this court's order pertain only to attorney Howard Towles.

[2]The State elected not to proceed upon the second case against the defendant (case No. 07 CR 15686) until after the resolution of the instant case at trial.

¶ 7        Detective Richter testified that on June 11, 2007, after the defendant had been arrested by the police, he investigated the crime scene at 5345 South Hoyne Avenue in Chicago, where he saw a vehicle that fit the description of a vehicle taken in an earlier aggravated vehicular hijacking. Subsequently, Detective Richter conducted a police lineup at the police station. Detective Richter stated that prior to conducting the police lineup, he was not aware of what physical descriptions Tremon may have provided to other police officers regarding the hijackers. Detective Richter noted that both Tremon and his girlfriend, who was also a victim of the hijacking, viewed the police lineup separately. He testified that Tremon's girlfriend was unable to identify either the defendant or codefendant Robinson in the police lineup. On cross-examination, Detective Richter testified that Tremon identified the car keys and wallet recovered from the crime scene as his property, identified the handgun as the one used against him in the vehicular hijacking, and identified the defendant in the police lineup as one of the offenders.

¶ 8        Following the parties' arguments, the trial court denied the motion to suppress, finding that the police had a reasonable suspicion to stop the defendant after the foot chase and had probable cause to arrest him after recovering the handgun from the alleyway. The trial court further found that the police lineup was not suggestive and that it was "one of the best lineups" the court had ever seen. All six men in the lineup were close in age and five men, including the defendant, wore a white tee-shirt and blue jeans.

¶ 9        On November 6, 2009, a bench trial commenced. During opening statements, defense counsel stated that the case was one of identification and that the police had arrested the defendant because he fit "a general description which was listed on a flash message." Defense counsel also noted that Tremon had known the defendant and the defendant's family for many years and that Tremon recognized the defendant's voice during the crime.

¶ 10        The State presented the testimony of Tremon, who testified that he was a 37-year-old postal worker and Dione Montgomery (Dione) was his girlfriend of nine years. On June 10, 2007, at approximately 11 p.m., he and Dione were at 1300 West 64th Street near Ogden Park in Chicago. Dione was seated in the passenger seat of her car, which was parked directly behind Tremon's car. Tremon was standing at the rear part of his vehicle when a man in a "dark hoody" approached him, drawing a silver revolver and demanding that Tremon empty his pockets. Tremon's pockets contained his mobile telephone, keys, wallet, a pocket Bible and some cash. At that same moment, a second man, wearing a "white hoody" and red bandanna over the lower part of his face, approached Dione's car. Although the second man's face was partly covered by a bandanna, Tremon could still "pretty much" see his face and identified the defendant in court as the man with the white hoody. The man in the dark hoody then placed Tremon into the backseat of Tremon's vehicle, while he sat in the front passenger seat. The defendant then entered the driver's seat of Tremon's vehicle and drove away. Shortly after the trio left the scene of the carjacking in Tremon's vehicle, the car's engine suddenly shut off due to its antitheft system. Tremon then explained to the two offenders that he needed to reset the alarm system, after which the man in the dark hoody, who was then sitting in the front passenger seat of the car, exited the vehicle and forced Tremon to change seats with him. As Tremon reentered the vehicle to sit in the front passenger seat, the man in the dark hoody struck him on the side of his head with the barrel

of a gun, causing a gash. Tremon then reached under the steering wheel of the car and reset the code for the alarm system, which then allowed the defendant to restart the car and continue driving. As they approached the intersection of 61st Street and Loomis Boulevard, the defendant pulled over to the side of the road and allowed Tremon to escape by climbing out of a side window of the car so as not to reactivate the antitheft alarm. The defendant and the man with the dark hoody drove away in Tremon's car. Tremon then called the police. Later, he went to a hospital where he received three staples to close his head wound. On June 11, 2007, at approximately 9 p.m., Tremon positively identified the defendant from a police lineup as one of the two offenders who had robbed him. Tremon testified that it was only when he viewed the police lineup that he first recognized the defendant, also known as "Little Earl," as someone whom he had known from "a previous card game or something." He did not recognize the defendant during the commission of the crime. At trial, Tremon positively identified his wallet, identification card and Bible from the photographs presented by the State of items recovered from the scene after apprehension of the offenders.

¶ 11    On cross-examination, Tremon testified that he did not remember when the card game in which he and the defendant participated had taken place, but that it was not within seven days of the crime. Tremon stated that his younger brother was also present at the card game, which was held at the home of the defendant's aunt, "Kesha," with whom Tremon had been acquainted since childhood. Tremon had socialized with Kesha over the years, which eventually brought him into contact with the defendant. However, Tremon denied that he also socialized with the defendant over the years. Defense counsel then asked whether there had been a dispute at the card game regarding "somebody being cheated out of money." The trial court sustained the State's objection to the question. Tremon acknowledged that he informed the police that one of the offenders said, "Oh Lord, we are going to have to kill him," while Tremon and the two offenders were in Tremon's vehicle. However, Tremon could not recall which offender made the statement. Tremon also could not recall whether he had been convicted of a felony in 2002.

¶ 12    On redirect examination, Tremon confirmed that while he was seated in the car during the crime, he was able to see the defendant's face and a "little smirk" through the bandanna. On re-cross-examination, Tremon testified that although he could see the defendant's face while he was seated in the car during the crime, Tremon did not realize at that point in time that this was someone he had seen on previous occasions.

¶ 13    Dione's testimony was substantially the same as Tremon's testimony regarding the events leading up to the crime and the initial encounter between Tremon and the man with the dark hoody. Dione testified that a man with a white hoody and red bandanna across his face, whom she identified in court as the defendant, approached Dione's car and pointed a shiny silver gun at her head. The defendant then asked Dione whether she had a cellular telephone, picked up her car keys, looked at them and then dropped them. The two offenders then put Tremon into the backseat of Tremon's car and the defendant entered the driver's seat of Tremon's car and drove away. Subsequently, Dione drove to a police station to report the crime, where she was also reunited with Tremon. She observed that Tremon was bleeding and that he later received medical treatment at a hospital. On June 11, 2007, at approximately 9 p.m., Dione and Tremon viewed a police lineup separately. Dione testified that she had

positively identified the defendant from the police lineup as one of the offenders. At trial, Dione also identified a photograph of a gun as the one the defendant had pointed at her during the commission of the crime.

¶ 14    On cross-examination, Dione acknowledged that during the "minute or so" when the defendant was pointing a gun at her head, she focused some of her attention on the weapon. However, Dione testified that even though the defendant's face was partially covered by a bandanna, she could see the top half of his face, including his eyes and eyebrows. Dione then stated that she could not recall whether she had positively identified the defendant at the police lineup as one of the offenders and acknowledged that the first time she identified the defendant as her assailant was during her direct testimony at trial. On redirect examination, Dione clarified that she was unable to make an identification in the police lineup in June 2007.

¶ 15    Officer Moran's trial testimony was substantially the same as his testimony at the pretrial suppression hearing. On cross-examination, he testified that as a result of police investigations, two tires from Tremon's car were found in a van that was parked near the alleyway and in front of the site of the defendant's arrest. However, he did not observe the defendant coming into contact with the van.

¶ 16    At the close of the State's evidence, defense counsel made a motion for a finding of not guilty or judgment of acquittal. The trial court found the defendant not guilty of aggravated unlawful use of a weapon (counts III to VI) and not guilty of unlawful use of a weapon by a felon (counts VII and VIII), on the ground that the State had failed to submit any evidence of the defendant's prior felony conviction for armed robbery, as charged in those counts. Further, the trial court also found the defendant not guilty of aggravated unlawful restraint (count XIII), because it was "part and parcel of the armed robbery." The trial court then denied the defendant's motion as to all other counts.

¶ 17    The defense presented the testimony of the defendant's relatives, Lakesha Williams (Lakesha), Kameshia Haywood (Kameshia), Christopher Williams (Christopher) and Andre Williams (Andre), who testified that they knew Tremon and that there had been numerous social gatherings at Lakesha's home where Tremon and the defendant were present. The social gatherings at Lakesha's home usually involved playing card games. Kameshia and Christopher specifically testified that they had seen Tremon and the defendant at Lakesha's house within seven days of the carjacking. However, on cross-examination, Christopher was unable to recall when the carjacking occurred. Andre testified that he saw both Tremon and the defendant present at a card game at Lakesha's home within seven days of the carjacking on June 10, 2007.

¶ 18    Following closing arguments, the trial court struck all testimony regarding Tremon's prior conviction, noting that the evidence had failed to establish such a conviction. The trial court then reviewed the evidence adduced at trial and ruled that the circumstantial evidence alone, without Tremon's identification of the defendant as the perpetrator, was more than sufficient to prove the defendant's guilt beyond a reasonable doubt for armed robbery (count I), aggravated vehicular hijacking (count II) and aggravated battery (count IX). The trial court noted that all other counts of aggravated battery merged into count IX.

¶ 19    On December 9, 2009, the defendant filed a motion for a new trial. On December 23, 2009, the trial court denied the motion for a new trial and subsequently sentenced the defendant to concurrent terms of 22 years of imprisonment for armed robbery and aggravated vehicular hijacking and 5 years of imprisonment for aggravated battery.

¶ 20    On December 30, 2009, the defendant filed a timely notice of appeal before this court.

¶ 21                                    ANALYSIS

¶ 22    We determine the following issues on appeal: (1) whether defense counsel's representation during the criminal proceedings was ineffective; and (2) whether a new sentencing hearing is warranted or whether, in the alternative, the sentence imposed should be reduced.

¶ 23    We first determine whether defense counsel's representation was ineffective during the criminal proceedings.

¶ 24    The defendant argues that defense counsel was ineffective during every stage of the criminal proceedings and enumerates multiple alleged infractions committed by defense counsel at the pretrial hearing, bench trial, and posttrial hearings which demonstrated counsel's misunderstanding of criminal law or his unpreparedness to defend the defendant.

¶ 25    The State counters that the defendant was afforded effective assistance of counsel where defense counsel filed a motion to suppress; made an opening statement; cross-examined each of the State's witnesses; presented four defense witnesses; made a closing argument; filed a posttrial motion for a new trial; and argued in mitigation at the sentencing hearing.

¶ 26    To prevail on a claim of ineffective assistance of counsel, the defendant: (1) must prove that the attorney's performance fell below an objective standard of reasonableness so as to deprive the defendant of the right to counsel under the sixth amendment (performance prong); and (2) that this substandard performance resulted in prejudice (prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984). To establish the performance prong, the defendant must overcome a strong presumption that, under the circumstances, the challenged action or inaction was sound trial strategy. *People v. Lopez*, 371 Ill. App. 3d 920, 929, 864 N.E.2d 726, 734-35 (2007). Because effective assistance of counsel refers to competent, not perfect, representation, "matters relating to trial strategy are generally immune from claims of ineffective assistance of counsel." *Id.* at 929, 864 N.E.2d at 735. Further, in determining the adequacy of counsel's representation, "a reviewing court will not consider isolated instances of misconduct, but rather the totality of the circumstances." *Id.* To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. King*, 316 Ill. App. 3d 901, 913, 738 N.E.2d 556, 566 (2000). A reasonable probability is one that sufficiently undermines confidence in the outcome. *Id.* The defendant must satisfy both prongs to prevail on his claim of ineffective assistance of counsel. However, a reviewing court may analyze the facts of the case under either prong first, and, if it deems that the standard for that prong is not satisfied, it need not consider the other prong. *People v. Irvine*, 379 Ill. App. 3d 116, 129-30, 882 N.E.2d 1124, 1136-37 (2008).

¶ 27    As a preliminary matter, we note that footnote 1 of the defendant's brief contains statements regarding disciplinary actions taken against defense counsel by the Illinois Attorney Registration and Disciplinary Commission (ARDC), the documentation of which is attached to the appendix. We find the inclusion of this evidence in the appendix to be an improper supplementation of the record with information *dehors* the record. See *People v. Green*, 2011 IL App (2d) 091123, ¶ 29. Thus, we strike this information and disregard it as irrelevant to the resolution of the issues before us.

¶ 28    Turning to the merits of the first issue, we note that the parties dispute the standard by which this court should evaluate defense counsel's performance in representing the defendant. While the State argues for the well-established *Strickland* standard, the defendant invites this court to deviate from the *Strickland* standard and to instead apply a standard pronounced in *United States v. Cronic*, 466 U.S. 648, 658-60 (1984), which eliminated the need for a specific showing of prejudice in circumstances where a presumption of prejudice can be made–such as when there is a complete denial of counsel or if counsel completely fails to subject the State's case to meaningful adversarial testing. We decline the defendant's invitation to apply the *Cronic* standard. Although defense counsel's representation was not perfect, our review of the record did not reveal a deficiency in his representation that would justify a presumption of prejudice upon the defendant. Thus, we apply the *Strickland* standard in our resolution of this issue.

¶ 29    The defendant first argues that defense counsel provided ineffective assistance during pretrial proceedings. He contends that defense counsel demonstrated his "lack of comprehension of the most basic tenets of criminal procedure" because the April 1, 2009 "motion to suppress identification and quash arrest" lacked legal merit. He argues that this incompetence was further exhibited at a status hearing on that day, when the trial court engaged in dialogue with defense counsel regarding the purpose of the motion and explained to defense counsel that there was "no such thing in a criminal case as a motion to quash arrest" but, rather, a motion to quash evidence stemming from an unlawful arrest.

¶ 30    We find that the defendant has failed to establish that he was prejudiced by defense counsel's filing of the April 1, 2009 "motion to suppress identification and quash arrest." The April 1, 2009 motion pertained only to facts of the unrelated case involving the defendant. The State elected not to proceed in that case (case No. 07 CR 15686). Although defense counsel filed this motion under the mistaken belief that case No. 07 CR 15686 was the elected case, once the mistake was discovered, defense counsel refiled a "motion to suppress identification and quash arrest" in the instant case on May 19, 2009. Because the erroneously filed April 1, 2009 motion had no bearing on the facts of this case, the defendant is unable to show that there was a reasonable probability that the outcome would have been different but for defense counsel's error.

¶ 31    Likewise, the defendant makes several arguments relating to the alleged deficiencies in the motion to suppress in the instant case, as well as defense counsel's performance at the August 3, 2009 hearing on the motion to suppress. The defendant claims that defense counsel was confused about the defense's burden of proof, erroneously assumed that the abandoned gun could be suppressed, and elicited evidence that helped the State establish the defendant's arrest as lawful. Assuming *arguendo* that defense counsel's performance at the suppression

hearing was deficient, the defendant cannot show that he was prejudiced because there is no reasonable probability that the outcome of the trial would have been different had the motion to suppress been granted by the trial court. Even without evidence stemming from the defendant's arrest, there was more than sufficient evidence at trial to convict the defendant. For example, the State presented evidence that the police responded to a call to investigate a car stripping in progress prior to the defendant's arrest. Upon arriving at the location, the police discovered that the vehicle was reported to have been stolen earlier that evening during a carjacking. The defendant and codefendant Robinson approached the vehicle before they knew the police were present, fled upon seeing the police, and were required to stop when ordered to do so. Officer Moran observed the defendant discard a shiny object during the foot chase, which was later discovered to be a gun. The police also recovered personal items belonging to Tremon near where Officer Moran observed the defendant throw the gun. This body of circumstantial evidence was more than enough for a finding of guilty. Thus, even if defense counsel's performance was not without flaws, the defendant failed to establish that he was prejudiced during pretrial proceedings.

¶ 32     Next, the defendant argues that defense counsel provided ineffective assistance of counsel at trial. He argues that defense counsel erroneously hinged his defense entirely upon the "nonsensical" theory that Tremon's police lineup identification of the defendant was incredible and unreliable on the following bases: (1) Tremon, having socialized with the defendant on prior occasions, should have immediately recognized the defendant during the carjacking, rather than later at the police lineup; (2) Tremon identified the defendant in the police lineup simply because Tremon recognized him as someone he knew but not because the defendant had committed the crime; and (3) a previous card game dispute involving the defendant provided Tremon with a motive to falsely identify the defendant in the police lineup.

¶ 33     We find the defendant's argument to be without merit. "Generally, counsel's choice of an appropriate defense is a matter of trial strategy or tactics not reviewable under the *Strickland* test, unless the choice is based upon a misapprehension of the law." *People v. Garmon*, 394 Ill. App. 3d 977, 987, 916 N.E.2d 1191, 1199 (2009). "Misapprehension of a defense theory may be shown where evidence is presented in such a manner that the jury is left with no choice but to convict defendant of the offenses charged [citation] ***." *Id.*, 916 N.E.2d at 1200. Although the defendant now disagrees with defense counsel's choice of a defense theory at trial, he does not maintain that the defense theory was based on a misapprehension of applicable law. While the defendant takes issue with the defense theory of unreliable identification, he does not suggest a better alternative. Similar to the defendant's claim of pretrial incompetence by his counsel, it is useful to highlight the overwhelming evidence against the defendant in analyzing his argument. Among the more damaging evidence was the following: the automatic starter and keys to Tremon's vehicle were found on the defendant's person; the defendant was observed by a police officer to discard a gun during the police foot chase; and personal property belonging to Tremon was found alongside the gun discarded by the defendant. See generally *People v. Hoskins*, 101 Ill. 2d 209, 219-20, 461 N.E.2d 941, 946 (1984). There is no reasonable probability that the outcome would have been different had defense counsel pursued a different defense theory.

Thus, the defendant's argument fails.

¶ 34       Next, the defendant makes several arguments relating to defense counsel's failed attempts to introduce certain evidence at trial. In support of his argument, the defendant highlights defense counsel's unsuccessful attempts to show that an alleged dispute at a card game gave Tremon a reason to falsely accuse the defendant. The defendant further argues that defense counsel failed to undermine Tremon's credibility when he neglected to present evidence to prove that Tremon had previously been convicted of a crime involving dishonesty. He also contends that eliciting evidence from defense witnesses that Tremon and the defendant previously attended the same social functions only served to bolster Tremon's credibility and bolster his identification of the defendant as the perpetrator.

¶ 35       While the defendant's argument has some validity regarding counsel's trial tactics, it is insufficient to overcome the strength of the evidence presented by the State. As discussed, that evidence was more than sufficient to prove the defendant guilty beyond a reasonable doubt. In fact, the trial court, in making its ruling, specifically noted that circumstantial evidence alone, without Tremon's identification of the defendant, was more than sufficient to convict the defendant. Thus, the defendant cannot show that he was prejudiced.

¶ 36       Nevertheless, the defendant argues that even if defense counsel's trial strategy was reasonable, defense counsel "undermined this strategy within seconds" by asking Tremon on cross-examination whether he recalled informing the police that, during the carjacking, one of the offenders stated, "Oh Lord, we are going to have to kill him." The defendant maintains that defense counsel, by engaging in this line of questioning, undermined the defense theory of unreliable identification by showing that Tremon had in fact recognized the defendant in the vehicle at the time of the carjacking. Our review of the record reveals that, in response to this line of questioning, Tremon indicated that he could not recall which offender made the quoted statement. The trial court noted in its ruling that a reasonable inference could be made from this statement, and from the defendant's partial concealment of his face with a bandanna during the crime, that the defendant wanted to hide his identity from Tremon because he knew Tremon. However, as we have stated, other evidence of record–such as the defendant's possession of Tremon's automatic starter and car keys at the time of his arrest; the abandoned gun during the police foot chase; and the recovery of Tremon's personal property from the same site where the defendant abandoned the gun–was more than sufficient to convict the defendant. Thus, the defendant has failed to show how he has been prejudiced.

¶ 37       Next, the defendant argues that defense counsel failed to subject the circumstantial evidence at trial to meaningful adversarial testing. Specifically, he asserts that defense counsel did not mount a defense against the circumstantial evidence, but instead continued to stress the theory that "the case was one of identification." The defendant cites *People v. Chandler*, 129 Ill. 2d 233, 543 N.E.2d 1290 (1989), for support of this argument.

¶ 38       A review of the record shows that defense counsel challenged the circumstantial evidence at trial by cross-examining each of the State's witnesses. We note that during cross-examination of Tremon, defense counsel elicited testimony that was not helpful to the State. For example, counsel showed that a photograph of the area where Tremon's personal items

were recovered only depicted Tremon's wallet, driver's license and other items, but did not depict a gun nearby. On cross-examination of Officer Moran, defense counsel elicited testimony that Officer Moran did not see the defendant discard anything other than a shiny metal object during the police foot chase; that no single photograph showing both the gun and Tremon's personal property existed; and that Officer Moran had no idea how Tremon's wallet and driver's license happened to be where they were found. Defense counsel also elicited testimony from Officer Moran that he did not know who owned the van in which tires from Tremon's car were found. Further, Officer Moran testified in response to counsel's questions that he never saw the defendant come into contact with the van at any time. In closing argument, defense counsel argued that the defendant's possession of the keys to Tremon's car showed at best an unlawful criminal trespass to property, but was insufficient to convict the defendant of the instant charges. Further, defense counsel argued that no fingerprints were found on the gun, and that there was nothing linking the defendant to the gun except a "cursory viewing of the weapon by witnesses who have already been shown [to be] less than credible." We believe this shows that defense counsel subjected the circumstantial evidence to meaningful adversarial testing. Thus, the facts in this case are distinguishable from those in *Chandler*, 129 Ill. 2d at 246-47, 543 N.E.2d at 1295 (counsel provided ineffective assistance where he failed to develop a theory of innocence; failed to cross-examine several key witnesses at all; presented no witnesses on behalf of the defense; failed to call defendant to the stand despite promising the jury during opening statements that defendant would testify; and mistakenly believed that the jury, despite being instructed on both felony murder and accountability, could find defendant not guilty since defendant did not inflict the fatal wounds upon the victim). Therefore, the defendant has not established that defense counsel's tactic in handling the circumstantial evidence fell below an objective standard of reasonableness so as to satisfy the performance prong under *Strickland*.

¶ 39    The defendant next argues that defense counsel's performance was deficient at trial for failing to present an offer of proof, such as a certification from the Secretary of State, concerning the ownership of the van. He argues that if the van is shown to belong to someone other than the defendant, it could have increased the "range of possible hijackers" and weakened the assumption that the defendant was one of the offenders. Even assuming *arguendo* that defense counsel had presented evidence that the van did not belong to the defendant, such evidence would not have been exculpatory in light of the other strong evidence pointing to the defendant's guilt. There are many plausible theories that would still support a finding of guilt, regardless of who owned the van. Thus, the defendant cannot establish a reasonable probability that the outcome of the case would have been different but for defense counsel's failure to present proof of ownership of the van.

¶ 40    The defendant also argues that defense counsel provided ineffective assistance of counsel because he failed to notice a glaring omission in the State's case–namely, that the State presented no evidence to prove that the defendant had a prior felony conviction, which was an essential element of several charges leveled against him. At the close of the State's evidence, defense counsel made a motion for a finding of not guilty or judgment of acquittal, arguing that the defendant should be acquitted of all charges. There was no mention of the absence of evidence showing the defendant's prior felony conviction. We agree that this was

error. However, we also note that this was a bench trial. The record shows that the trial court, *sua sponte*, acknowledged that the State had failed to submit any evidence of the defendant's prior felony conviction for armed robbery. As a result, the trial court found the defendant *not guilty* of several of the offenses charged (counts III to VIII and XIII) which were premised upon his prior felony conviction of armed robbery. Thus, the defendant was not prejudiced by defense counsel's error.

¶ 41 Next, the defendant maintains that defense counsel was ineffective during posttrial proceedings when he appeared in court for a hearing without the case file. On December 23, 2009, defense counsel made arguments before the court in support of the defendant's motion for a new trial, which the trial court denied and proceeded to the sentencing stage of the case. The trial court then asked defense counsel whether the presentence investigative report (PSI report) contained any inaccuracies, to which counsel replied, "Judge, I'm at a loss. I don't have the file with me at this moment." At that point, the trial court allowed defense counsel a short break to review a copy of the PSI report, after which defense counsel informed the trial court that he found no inaccuracies in the PSI report. Thereafter, defense counsel argued in mitigation on behalf of the defendant at the sentencing hearing.

¶ 42 While it was not good practice to appear in court without the case file, the defendant cannot show any negative impact or prejudice as a result. We find that the defendant has failed to satisfy both prongs of the *Strickland* test in arguing that defense counsel was ineffective for failing to bring his case file to the posttrial hearing. Thus, the defendant's ineffective assistance claim on this basis must fail.

¶ 43 We also reject the defendant's argument that he was prejudiced by the intervention of the trial court during the proceedings. A review of the record reveals that the incidents of which the defendant now complains were not prejudicial to the defendant so as to render defense counsel's representation ineffective. *Cf. People v. Baines*, 399 Ill. App. 3d 881, 899, 927 N.E.2d 158, 172-73 (2010) (defense counsel was ineffective for the primary reason that he impeached his own client, which harmed the defendant's case, and for a secondary reason that the trial court frequently intervened at the jury trial to guide defense counsel through rudimentary trial procedures and to correct counsel's mistakes). The record shows that the trial court in this case also intervened at various points *sua sponte* during the State's presentation of its case-in-chief in order to clarify a witness's testimony or to sustain a question posed to a witness. Accordingly, when the case is viewed in its entirety, we cannot say that defense counsel was cumulatively ineffective during the different stages of the defendant's criminal proceedings.

¶ 44 We next determine whether a new sentencing hearing is warranted or, in the alternative, whether the sentence imposed should be reduced.

¶ 45 On December 23, 2009, the trial court sentenced the defendant to 22 years of imprisonment for his armed robbery conviction and 22 years of imprisonment for his aggravated vehicular hijacking conviction, to be served concurrently with a 5-year sentence for aggravated battery. In imposing the sentences for armed robbery and aggravated vehicular hijacking, the trial court included a 15-year firearm sentencing enhancement for each of those offenses under sections 18-2(a)(2), (b) and 18-4(a)(4), (b) of the Criminal Code of 1961 (the

Code) (720 ILCS 5/18-2, 18-4 (West 2000)).

¶ 46    In a supplemental brief before this court,[3] the defendant argues that the 15-year firearm sentencing enhancements for armed robbery and aggravated vehicular hijacking were declared unconstitutional and void *ab initio* pursuant to *People v. Hauschild*, 226 Ill. 2d 63, 871 N.E.2d 1 (2007), and *People v. Andrews*, 364 Ill. App. 3d 253, 845 N.E.2d 974 (2006), respectively. The defendant contends that because a subsequent 2007 legislative amendment to the armed violence statute did not "revive" the 15-year firearm sentencing enhancements for the armed robbery or aggravated vehicular hijacking statutes, this court should vacate the defendant's sentences for armed robbery and aggravated vehicular hijacking and remand this cause for resentencing under the sentencing provisions which predated the invalid statutes.

¶ 47    The State counters that the *Hauschild* case was wrongly decided. In the alternative, however, the State asks this court to reject the defendant's contention that the Illinois legislature's 2007 amendment to the armed violence statute did not "revive" the 15-year firearm sentencing enhancements for armed robbery and aggravated vehicular hijacking. However, the State concedes that the cause should be remanded for resentencing under the provisions that predated the invalid statutes. The State's concession is premised on its reasoning that the defendant committed the crimes after the *Hauschild* decision and before the legislature's 2007 amendment.

¶ 48    A constitutional challenge to a statute may be raised at any time and is subject to *de novo* review. *People v. Robinson*, 2011 IL App (1st) 100078, ¶ 12. Statutes are presumed to be constitutional. *People v. Sharpe*, 216 Ill. 2d 481, 487, 839 N.E.2d 492, 497 (2005). "To overcome this presumption, the party challenging the statute must clearly establish that it violates the constitution." *Id.* Article I, section 11 of the Illinois Constitution provides that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A proportionate penalties challenge to a statute alleges that "the penalty in question was not determined according to the seriousness of the offense." *Sharpe*, 216 Ill. 2d at 487, 839 N.E.2d at 498. A defendant's sentence violates the proportionate penalties clause of the Illinois Constitution when: (1) the penalty is "cruel, degrading, or so wholly disproportionate to the offense committed as to shock the moral sense of the community"; or (2) the penalty is harsher than the penalty for a different offense that contains identical elements. (Internal quotation marks omitted.) *Id.* at 487, 521, 839 N.E.2d at 498, 517.

¶ 49    In *Hauschild*, our supreme court held that the sentence for armed robbery while armed with a firearm, imposed under the same armed robbery statute as in the instant case, violated the proportionate penalties clause because the penalty for that offense was "more severe than the penalty for the identical offense of armed violence predicated on robbery with a category I or category II weapon." *Hauschild*, 226 Ill. 2d at 87, 871 N.E.2d at 14. Although the offense

---

[3]On March 1, 2012, this court granted the defendant's motion to file a supplemental brief. Subsequently, the State also filed a supplemental response brief addressing the sentencing issue raised by the defendant's supplemental brief. A supplemental reply brief was also filed by the defendant.

of armed robbery while armed with a firearm was punishable by an enhanced sentence of 21 to 45 years of imprisonment, armed violence predicated on robbery with a category I or category II weapon was punishable by a sentence of 15 to 30 years of imprisonment. *Id.* at 86, 871 N.E.2d at 14.

¶ 50 Similarly, in *Andrews*, this court held that the penalty for aggravated vehicular hijacking while carrying a firearm, imposed under the same aggravated vehicular hijacking statute as in the instant case, was unconstitutionally disproportionate to the penalty for the offense of armed violence with a category I weapon predicated on vehicular hijacking. *Andrews*, 364 Ill. App. 3d at 275, 845 N.E.2d at 993. While the penalty for aggravated vehicular hijacking while carrying a firearm had a sentencing range of 21 to 45 years of imprisonment, armed violence with a category I weapon predicated on the offense of vehicular hijacking, which contained identical elements as the offense of aggravated vehicular hijacking, was punishable by 15 to 30 years of imprisonment. *Id.* at 273-75, 871 N.E.2d at 992-93.

¶ 51 The State argues in this and in other cases before our supreme court that *Hauschild* was wrongly decided. However, in *People v. Clemons*, 2012 IL 107821, decided by our supreme court after the parties here had submitted their briefs before this court, our supreme court rejected this argument. The supreme court held that *Hauschild* remains good law and declined to abandon the identical elements test for proportionality review. *Clemons*, 2012 IL 107821, ¶¶ 19, 26, 53. Thus, applying the holdings in *Hauschild* and *Andrews* to the instant case, we find that the 15-year sentencing enhancements for the defendant's convictions for armed robbery and aggravated vehicular hijacking violated the proportionate penalties clause and are thus void.

¶ 52 In 2007, subsequent to the *Hauschild* and *Andrews* decisions, the Illinois legislature cured the proportionate penalties clause violations explained in those cases by excluding armed robbery and aggravated vehicular carjacking as predicate offenses to the armed violence statute. See Pub. Act 95-688, § 4 (eff. Oct. 23, 2007) (amending 720 ILCS 5/33A-2, 33A-3). Thus, as of October 23, 2007, the effective date of Public Act 95-688, the constitutional infirmities for the armed robbery, aggravated vehicular hijacking, and armed violence statutes addressed by the *Hauschild* and *Andrews* courts were no longer present.

¶ 53 Nonetheless, the defendant maintains that because the legislature's 2007 amendment, enacted subsequent to the *Hauschild* and *Andrews* decisions, did not "revive" the 15-year firearm sentencing enhancements for the armed robbery or aggravated vehicular hijacking statutes, this court should vacate the defendant's sentences for armed robbery and aggravated vehicular hijacking and remand this cause for resentencing under the sentencing provisions which predated the invalid statutes.

¶ 54 The State concedes that the cause should be remanded for resentencing under the provisions that predated the invalid statutes, but for the reason that the defendant committed the crimes after the *Hauschild* decision and before the legislature's 2007 amendment. We agree that the case should be remanded for resentencing.

¶ 55 We note that this court in *People v. Brown*, 2012 IL App (5th) 100452, rejected the exact argument proposed by the defendant here, specifically, that the legislature's 2007 amendment did not "revive" the 15-year sentencing enhancements for the armed robbery or aggravated

vehicular hijacking statute. In *Brown*, the court expressly stated that the legislature had revived the 15-year firearm sentencing enhancements by enacting Public Act 95-688. *Id.* ¶ 17. Thus, the legislature's 2007 amendment removed the constitutional violation of the proportionate penalties clause regarding armed robbery and aggravated vehicular hijacking.

¶ 56    However, notwithstanding the 2007 amendment's revival of the 15-year firearm sentencing enhancements for the subject offenses, the defendant's 22-year sentences for armed robbery and aggravated vehicular hijacking must be vacated and the cause remanded for resentencing. The defendant committed the crimes on June 10, 2007, *after* the *Hauschild* and *Andrews* decisions but *before* Public Act 95-688 became effective on October 23, 2007. Thus, it was error for the trial court to add the 15-year firearm sentencing enhancements to the defendant's convictions for armed robbery and aggravated vehicular hijacking. Therefore, we vacate the defendant's sentences for armed robbery and aggravated vehicular hijacking and remand the cause to the trial court for resentencing under the statutory provisions that existed immediately prior to the enactment of the invalid statutes. See *Clemons*, 2012 IL 107821, ¶¶ 56, 60; *Hauschild*, 226 Ill. 2d at 88, 871 N.E.2d at 15 (when an amended statute has been found to violate the proportionate penalties clause, the proper remedy is to remand for resentencing in accordance with the statute as it existed prior to the amendment); *People v. McBride*, 2012 IL App (1st) 100375, ¶¶ 36-37 (preamended version of the aggravated vehicular hijacking statute was "automatically resuscitated" when the amended statute was invalidated by the reasoning in *Andrews* (citing *People v. Washington*, 2012 IL 107993)). Accordingly, on remand, the defendant would be subjected to a sentencing range of 6 to 30 years for armed robbery (720 ILCS 5/18-2(b) (West 2000)) and 7 to 30 years for aggravated vehicular hijacking (720 ILCS 5/18-4(b) (West 2000)), which, as previously ordered by the trial court, will be served concurrently with the defendant's 5-year sentence for aggravated battery. We do not vacate the 5-year sentence for aggravated battery.

¶ 57    In light of our holding, we need not address the defendant's request for relief on the alternative ground that the 22-year concurrent sentences for his armed robbery and aggravated vehicular hijacking convictions should be reduced to 21-year sentences, where the trial court fashioned those sentences under the mistaken belief that 22 years of imprisonment was the minimum sentence. Likewise, we need not address the defendant's argument that defense counsel was ineffective for failing to correct the trial court's error during the sentencing hearing.

¶ 58    We affirm the defendant's convictions; affirm the defendant's five-year sentence for aggravated battery; vacate the defendant's sentences for armed robbery and aggravated vehicular hijacking; and remand the cause to the trial court for resentencing on the defendant's armed robbery and aggravated vehicular hijacking convictions consistent with this court's opinion.

¶ 59    Affirmed in part and vacated in part; cause remanded with directions.