2024 IL App (2d) 230224-U
No. 2-23-0224
Order filed August 29, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 22-CF-175 |
| DANIEL SALGADO, | ) ) | Honorable John A. Barsanti, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Kennedy concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Counsel was not ineffective for failing to investigate and raise an insanity defense where counsel proceeded on a legally sound defense theory and the merits of an insanity defense would not have been apparent to a reasonably competent defense attorney. Counsel was also not ineffective for failing to file a motion to suppress the interrogation video where defendant knowingly and voluntarily waived his *Miranda* rights, and therefore, a motion to suppress would have been futile. Affirmed.

¶ 2    Defendant, Daniel Salgado, appeals from the May 23, 2023, judgment of the Kane County

trial court finding him "not not guilty" of unlawful possession of a stolen motor vehicle (625 ILCS

5/4-103(a)(1) (West 2022)), after a discharge hearing held pursuant to 725 ILCS 5/104-25 (West

2022). On appeal, he contends that he received ineffective assistance of counsel because defense counsel (1) failed to investigate or raise the affirmative defense of insanity; and (2) failed to move to suppress defendant's statements to police during a custodial interrogation. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4       On January 31, 2022, defendant was charged by complaint with one count of possession of a stolen motor vehicle (625 ILCS 5/4-103(a)(1) (West 2022)), a Class 2 felony; one count of theft of property over $500 but not exceeding $10,000 (720 ILCS 5/16-1(a)(1) (West 2022)), a Class 3 felony; one count of burglary without causing damage (720 ILCS 5/19-1(a) (West 2022)), a Class 3 felony; and one count of leaving the scene (625 ILCS 5/11-402(a) (West 2022)), a Class A misdemeanor. A grand jury subsequently returned an indictment charging defendant with unlawful possession of a stolen motor vehicle and burglary. The charges were based on an alleged incident that occurred on January 27, 2022, wherein defendant, without authority, entered the offices of Prairie State Gaming, took car keys from a desk, and drove away in a Volvo belonging to the business.

¶ 5       On August 7, 2022, defendant was charged with six additional felonies in Case No. 22-CF-1414. Defense counsel referred defendant for a fitness evaluation, based on information learned in the new case. Both matters proceeded to a fitness hearing on September 22, 2022. At the hearing, the trial court found defendant unfit to stand trial and that he could be restored to fitness within one year.

¶ 6       The Illinois Department of Human Services submitted Fitness to Stand Trial Progress Reports on October 25, 2022, and January 18, 2023. In the January 18 report, DHS indicated that defendant was unlikely to be restored to competency within the statutory time limit. Given that indication, on May 11, 2023, the matter proceeded to a discharge hearing held pursuant to 725

ILCS 5/104-25 (West 2022). The State elected to proceed on 22-CF-175, which is the case currently before this court.

¶ 7    The State called Officer Chris Gardner, an Indian Head Park police officer, as their first witness. He testified that on January 27, 2022, he was dispatched to the Walgreens at 6600 Willow Springs Road in Indian Head Park in regard to an unwanted subject. Upon arrival, Gardner made contact with defendant, who told Gardner that he had committed several homicides. Gardner testified that the defendant was difficult to understand because he was very inebriated. When asked how he had gotten to the Walgreens, defendant indicated he had driven in a Ford that was in the parking lot. Gardner was later able to ascertain that defendant had actually driven to the Walgreens in a Volvo that had been reported as stolen. Defendant was then taken to Adventist Lagrange Memorial Hospital for a psychological evaluation but was cleared and returned to police custody the same day. As part of a search conducted prior to transport of defendant, Gardner found keys to the stolen Volvo and a gas card belonging to Prairie State Gaming on defendant's person. Gardner testified that throughout his interaction with defendant, he was crying and upset and generally seemed confused.

¶ 8    Officer William Sullivan, an Aurora police officer, testified next. He testified that he was assigned to assist with a burglary that had occurred at Prairie State Gaming. As part of his investigation, he obtained surveillance footage from the office building where the burglary occurred on January 27, 2022.

¶ 9    Xay Kong, the director of finance at Prairie State Gaming, testified that when he arrived at work on January 27, 2022, the Volvo and its keys were both missing. He also testified that he did not know defendant and that defendant had never been employed at Prairie State Gaming and did not have authority to access the offices at Prairie State Gaming or any of the company's vehicles

or gas cards. Kong also testified regarding the surveillance footage—specifically, that he reviewed the footage with the security team and subsequently marked the disc with his initials. After some discussion, the trial court allowed the State to play the footage, but reserved ruling on its admissibility, allowing the State to attempt to lay proper foundation under the silent witness theory (see *People v. Taylor*, 2011 IL 10067, ¶ 32) later in its case-in-chief. The footage showed an individual wearing a letterman jacket with a bird and the letters USA emblazoned on the back enter the offices of Prairie State Gaming, apparently grab something from one of the desks, and then drive off with a Volvo that was in the parking lot.

¶ 10    The State then called Detective Kevin Driscoll of the Aurora Police Department as their final witness. He testified that he was assigned to investigate the burglary at Prairie State Gaming. He testified that in the course of his investigation, the Indian Head Park police department contacted him to advise they had recovered the stolen Volvo and had defendant in custody. Driscoll provided an in-court identification of defendant, identifying him by an article of clothing as the individual in custody on the day of the incident.[1] He also testified that he interviewed defendant on January 28, 2022. A video recording of the interview was admitted as People's Exhibit No. 5.

¶ 11    The video recording showed that defendant was able to give officers his name, birthday, and address with no apparent difficulty, though he told officers "James Bond" is another name he goes by. Defendant also claimed he graduated from Harvard in 2064. Before continuing the interview, Driscoll had defendant sign a waiver of *Miranda* rights. Defendant appeared to read the

_____

[1]    The State did not ask the trial court for the record to reflect the in-court identification. Defense counsel later challenges the sufficiency of the identification as it was never noted by the trial court.

document, following along line by line with his pen. After reading, he initialed and signed the document where indicated. Another officer in the room verified that defendant had read the top portion of the waiver, and defendant proceeded to read the portion out loud. When asked if he understood his rights, he indicated he did and did not have any questions.

¶ 12    Driscoll then asked defendant if he knew why he was there. Defendant responded with a question, asking officers if it was for "the hot rod or the stolen beer." Defendant then told officers he found "the ride" and then "took off all over the place." He indicated that he found it "down town" in a parking lot. A side door was open, he found the keys, took the car, and drove off. He told officers he went to Chicago and St. Louis before two officers picked him up. Defendant told Driscoll that he wasn't sure if the officers were picking him up for the hot rod or the stolen beer. When asked if he remembered what business he entered and why he took the car, he told Driscoll that he had been walking downtown, and found the door unlocked. Defendant did not seem to remember the kind of vehicle he had taken but told officers it was gray. When asked about the gas card, defendant said that it belonged to him. Defendant identified the card as "0455," which were the first four digits of the card. Driscoll showed defendant a photo of the card, and defendant was able to read that the card belonged to Prairie State Gaming.

¶ 13    After the video played and Driscoll finished testifying, the State rested. Defense counsel moved for a directed finding, arguing that because of the illogical, delusional, and impossible statements made by defendant, the State had failed to prove that he committed the offenses "knowingly." Defense counsel further argued that the State failed to prove defendant was the one who committed the offenses. The trial court denied the motion.

¶ 14    In defendant's case-in-chief, the trial court took judicial notice of the September 14, 2022, fitness evaluation, the September 22, 2022, court order finding defendant unfit, and the Fitness to

Stand Trial Progress Reports. The fitness evaluation and fitness reports showed defendant suffered from schizophrenia. The defense then rested and renewed its motion for a directed finding, arguing again that the State failed to prove defendant was the one who committed the offenses. Defense counsel also argued that the State failed to prove defendant had the requisite state of mind at the time of the offense because of the information contained in defendant's exhibits, defendant's psychiatric evaluation and hospitalization, his nonsensical statements to officers, and the nonsensical statements in the recorded interview.

¶ 15    The trial court issued its decision on May 23, 2023, finding that "the evidence presented does not prove the [d]efendant guilty beyond a reasonable doubt of [b]urglary" and that "the evidence proves [d]efendant guilty beyond a reasonable doubt of [u]nlawful [p]ossession of a [s]tolen or [c]onverted [m]otor [v]ehicle."[2] Defendant filed a motion for a new discharge hearing on June 21, 2023, arguing, *inter alia*, that the State failed to make a proper in-court identification of defendant and that the State failed to prove that defendant committed the offenses "knowingly" beyond a reasonable doubt. The trial court denied that motion on July 6, 2023. Defendant then filed a timely notice of appeal that same day, and an amended notice of appeal on July 24, 2023.

¶ 16                                II. ANALYSIS

---

[2] In its written verdict, the trial court mirrored the language of 725 ILCS 5/104-25 (West 2022) ("If the discharge hearing does not result in an acquittal of the charge the defendant may be remanded for further treatment***." *Id.* § 104-25(d)). As the trial court noted in its oral verdict, the term "not not guilty" has been used by courts to describe when a discharge hearing does not result in an acquittal. See *People v. Waid*, 221 Ill. 2d 464, 470 (2006); *People v. Olsson*, 2011 IL App (2d) 091351, ¶ 4.

¶ 17    On appeal, defendant argues that he received ineffective assistance of counsel because defense counsel (1) failed to investigate or raise the affirmative defense of insanity; and (2) failed to move to suppress defendant's statements to police during a custodial interrogation. For the following reasons, we affirm.

¶ 18    Each of defendant's arguments allege ineffective assistance of counsel. In determining the merit of these arguments, we are guided by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Although this standard is more commonly employed in the context of appeals from convictions after criminal trials or guilty pleas, it has also been applied in the context of a discharge hearing. See *People v. Young*, 220 Ill. App. 3d 98, 107 (1991); *People v. Manns*, 373 Ill. App. 3d 232, 239 (2007); *People v. Lavold*, 262 Ill. App. 3d 984, 996 (1994).  In order to prevail on an ineffective assistance of counsel claim, a defendant must show both that (1) counsel's performance was deficient and (2) this deficient performance prejudiced defendant. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). If defendant fails to show either prong, the ineffective assistance of counsel claim will fail.

¶ 19    As a general rule, counsel's performance is strongly presumed to be reasonable. *People v. Jones*, 2012 IL App (2d) 110346, ¶ 82. However, a defendant can overcome that presumption if defense counsel's choice of strategy "appears so irrational and unreasonable that no reasonably effective defense attorney, facing similar circumstances, would pursue such a strategy." *Id.* Alternatively, counsel's choice of strategy can be reviewable under the *Strickland* test if their choice is based on a misapprehension of law. *People v. Garmon*, 394 Ill. App. 3d 977, 987 (2009).

¶ 20    A defendant is prejudiced by counsel's deficient performance if there is a reasonable probability that the result would have been different but for counsel's deficient performance. *People v. Houston*, 226 Ill.2d 135, 144 (2007). A reasonable probability is a probability sufficient

to undermine confidence in the outcome. *People v. Petrie*, 2021 IL App (2d) 190213, ¶ 80. There are also a narrow set of circumstances in which prejudice can be presumed. For example, "[i]f defense counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, there is a denial of the right to counsel that makes the adversary process itself presumptively unreliable." *People v. Young*, 220 Ill. App. 3d 98, 107 (1991) (citing *United States v. Cronic*, 466 U.S. 648, 658-59 (1984)).

¶ 21 Defendant's first argument involves sanity. Specifically, that defense counsel was ineffective for failing to request a sanity evaluation of defendant and for failing to raise the affirmative defense of insanity at the discharge hearing.

¶ 22 As an initial note, the State correctly asserts that because defendant is pursuing his claim on direct appeal, our review is limited to the record (see *People v. Veach*, 2017 IL 120649, ¶ 46). However, we disagree with its assertion that defendant's claim automatically fails because there is no expert report on insanity in the record. In *People v. Young*, this Court found that because defense counsel failed to subject the prosecution's case to meaningful adversarial testing and because the record contained overwhelming evidence tending to show insanity, defense counsel was ineffective for failing to even investigate the insanity defense. *People v. Young*, 220 Ill. App. 3d 98, 106-108. Importantly, there was no expert report on insanity in the record. However, the record did include evidence showing: that defendant had been examined by numerous experts who all concluded he was suffering from paranoia and delusional thinking; that defendant had been hospitalized twice for mental problems; and that the facts of the case themselves indicated severe mental health issues. *Id.* at 108-109. Thus, the failure to investigate and argue the insanity defense was objectively unreasonable and the lack of an expert report on insanity did not bar a finding of

ineffective assistance of counsel. *Id.* Similarly, the lack of an expert report on insanity here does not automatically bar a finding of ineffective assistance of counsel.

¶ 23    Turning now to the merits. As discussed above, *People v. Young* laid out a framework for finding ineffective assistance of counsel where defense counsel fails to investigate and raise an insanity defense. Under this framework, we first look to defense counsel's actual performance and the defense actually set forth. *Young*, 220 Ill. App. 3d at 107-108. If defense counsel's actual performance was deficient, we then look to the whether the merits of an insanity defense would have been apparent to a reasonably competent defense attorney. *Id.* at 109. If both prongs are met, then the analysis moves on to the prejudice prong of the *Strickland* analysis.

¶ 24    Here, we cannot find that the defense theory put forward by counsel was unsound as a matter of law, and accordingly, we cannot find that counsel was ineffective. Defendant compares the instant case to *People v. Young*, 220 Ill. App. 3d 98, and *People v. Manns*, 373 Ill. App. 3d 232. Both cases are distinguishable. In each of these cases, defense counsel did not subject the prosecution's case to *any* sort of meaningful adversarial testing. In *Young*, defense counsel engaged in minimal cross examination, introduced no evidence, and devoted nearly all of his closing argument to a theory that a conviction of armed violence would be an improper double enhancement of an intimidation conviction, which was an unsound theory as a matter of law. *Young*, 220 Ill. App. 3d at 106-108. In *Manns*, defense counsel engaged in minimal cross examination, offered no evidence on behalf of the defendant, and declined closing argument entirely. *Manns*, 373 Ill. App. 3d at 238-239.

¶ 25    In the present case, defense counsel engaged in strenuous cross examination, introduced three exhibits into evidence in their case-in-chief, and made a multi-factored closing argument, arguing that the State failed to prove (1) that defendant was the individual who committed the

offenses; and (2) that defendant committed the offenses knowingly. The trial court spent a copious amount of time discussing defense counsel's second argument: that defendant's behavior at the scene of the crime, his statements to officers made during the interrogation, and his schizophrenia diagnosis all showed that he could not form the requisite *mens rea*. It ultimately concluded that counsel's second argument amounted to the unrecognized defense of diminished capacity. Even though counsel's second argument may not have been a recognized defense in Illinois, that does not negate the fact that she presented a legally sound argument as well. Equal time was dedicated to each argument, and her first argument resulted in an acquittal on the burglary charge. Looking at counsel's performance as a whole, we cannot find that counsel did not subject the prosecution's case to meaningful adversarial testing.

¶ 26     Even if we were to assume that counsel did not subject the prosecution's case to meaningful adversarial testing, the merits of an insanity defense would not have been apparent to a reasonably competent defense attorney, such that counsel would be ineffective for not raising it. Again, comparison to *Young* and *Manns* is helpful. In *Young*, the facts of the crime itself were so bizarre that they supported a finding of insanity. *Young*, 220 Ill. App. 3d at 109. For example, defendant in *Young* coerced his former wife at gunpoint into signing a "confession" that she killed his mother, who was not dead. *Id.* Similarly in *Manns*, the facts of the crime itself supported a finding of insanity. After robbing a bank, the defendant threw his ID down on the counter, saying that he wanted to get caught because "he wanted to go talk the judge so the judge would give him back his bank." *Manns*, 373 Ill. App. 3d at 237. In this case, the facts do not support insanity. Defendant calmly walked into a business, found and took a pair of keys, located the vehicle that the keys belonged to, and drove away in that vehicle. This is not the behavior of an individual who cannot appreciate the wrongfulness of his actions. Additionally, there was no recorded confession in either

*Young* or *Manns*. However, here, in the police interrogation video, when asked why he was there, defendant responded with a question, asking officers if it was for the "hot ride" or the stolen beer. Finally, unlike *Young* and *Manns*, in this case, the trial court specifically found that defendant "[gave] answers during the police interview which clearly demonstrated that [he] understood what he had done and its illegality." Based on all the above, the merits of an insanity defense would not have been apparent to a reasonably competent defense attorney, such that counsel would be ineffective for not raising it.

¶ 27    Turning now to defendant's final argument—that defense counsel was ineffective for failing to move to suppress defendant's statements to police during a custodial interrogation on the basis that he did not knowingly and voluntarily waive his *Miranda* rights. The State responds that the filing of a motion to suppress would have been futile, and accordingly, defense counsel was not ineffective for electing not to file a motion that would ultimately be denied. We agree with the State.

¶ 28    As discussed above, in order to prevail on an ineffective assistance of counsel claim, defendant must show both prejudice and deficient performance. *Strickland*, 466 U.S. at 687. In the context of counsel's failure to file a motion to suppress, defendant can prove prejudice by showing there is a reasonable probability that (1) the motion would have been granted, and (2) the outcome of the trial would have been different had the evidence been suppressed. *People v. Patterson*, 217 Ill. 2d 407, 438 (2005). A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome [of the proceeding]." *People v. Veach*, 2017 IL 120649, ¶ 30 (citing *People v. Simpson*, 2015 IL 116512, ¶ 35). If the motion would have been futile, counsel was not ineffective for choosing not to file it. *Id.*

¶ 29    Here, defendant cannot show that a motion to suppress would have been granted, so his ineffective assistance argument fails. Defendant contends that had a motion been filed, it would have been granted on the basis that he lacked the capacity to waive his *Miranda* rights, and accordingly, his waiver was not knowing or voluntary. He argues that the psychological reports and the recording of the interrogation, "depict a defendant who lacks the substantial capacity to knowingly and intelligently waive [*Miranda*] rights." Defendant notably does not cite to any authority to support this claim. Rather, he makes conclusory statements and ignores efforts made by the police to ensure defendant was properly informed of his rights before proceeding with the interrogation. For example, the police officers began by ensuring defendant could read and write English. Once they confirmed that, they handed defendant a written copy of the *Miranda* warnings, with lines for defendant to initial. At first, defendant seemed to be rushing through the form, merely initialing where needed. However, once the officers noticed this, they told defendant he did not have to rush through it. Defendant then appeared to slow down and began following each line with his pen, apparently reading each line before initialing. The officers also had defendant read the form aloud. Once defendant had done so, the officers asked defendant if he understood those rights. Defendant responded in the affirmative. The officers then asked if defendant had any questions about those rights. Defendant indicated he did not have any questions. Only then did the officers proceed with the interrogation. Contrary to defendant's argument, the interrogation video offers shows that defendant did in fact understand his Fifth Amendment rights and had the capacity to waive them.

¶ 30    Defendant also seemingly attempts to argue that because the officers did not read the *Miranda* warnings aloud, defendant's subsequent waiver could not have been knowing and voluntary, and therefore, a motion to suppress would have been granted. Again, defendant cites to

no authority supporting this argument, nor was this argument meaningfully fleshed out in his brief. Neither the United States Supreme Court, nor the Illinois Supreme Court, have ever insisted that *Miranda* warning be given verbally, read verbatim by officers. *People v. Wheeler*, 281 Ill. App. 3d 447, 460. Rather, *Miranda* warnings must reasonably convey to a suspect his or her rights. *Id.* Here, the warnings given did just that. As discussed above, the officers made extensive efforts to ensure that defendant was properly warned, and that he understood those warnings. They began by ensuring defendant could read and write English, and then handed defendant a written copy of the warnings and waiver. When it appeared as though defendant was just rushing through the form, the officers slowed him down. They had defendant read the warnings aloud, and before beginning the interrogation, they ensured that defendant understood the warnings and that defendant did not have any questions. All of these actions show that the officers reasonably conveyed defendant's rights to him, and that defendant knowingly and voluntarily waived those rights.

¶ 31    Additionally, throughout defendant's opening and reply briefs, he relies on the fitness reports to support his argument that he lacked the capacity to waive his Fifth Amendment rights. Specifically, he states that "counsel had extensive psychological reports that indicated the defendant lacked capacity to waive his Fifth Amendment rights" because the September 14, 2022, fitness report said: "Mr. Salgado did not display understanding of his Fifth Amendment rights." This framing is incredibly disingenuous. Reviewing the fitness report in context, it is clear that defendant was being evaluated only for his fitness to stand trial based on his mental state *at the time of the evaluation*. Just because defendant did not display understanding of his Fifth Amendment rights at the time of the evaluation, does not mean that he did not understand them at the time of the interrogation. Defendant cites to nothing else that would indicate he did not understand his Fifth Amendment rights at the time of the interrogation.

¶ 32    Because defendant cannot show that a motion to suppress would have been granted, we need not address whether the outcome of the trial would have been different had the evidence been suppressed. See *People v. Johnson*, 2021 IL 126291, ¶ 53 ("[I]f it is easier to dispose of an ineffective-assistance of counsel claim on the ground that it lacks a showing of sufficient prejudice, a court may proceed directly to *Strickland*'s prejudice prong and need not determine whether counsel's performance was deficient."). His ineffective assistance argument fails.

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we affirm the judgment of the trial court of Kane County.

¶ 35    Affirmed.